**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Leo R. GOHL, Defendant and Appellant.**

**Cr. No. 910136.**

Supreme Court of North Dakota.

Nov. 12, 1991.

Peter Haroldson Furuseth, States Atty., Williston, for plaintiff and appellee.

Anseth & Zander, Williston, for defendant and appellant; argued by Janet Holter Zander.

ERICKSTAD, Chief Justice.

The defendant, Leo R. Gohl, appeals from the order of the District Court for Williams County denying his motion to dismiss the charges against him on grounds of lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim on which relief can be granted based on sovereign immunity.[1] We dismiss the appeal.

Leo R. Gohl was charged with theft of property in violation of sections 12.1–23–02(1) and 12.1–23–05(2)(a), N.D.C.C., for allegedly knowingly taking pulltabs from a gaming establishment. The gaming establishment where the theft was alleged to have occurred is apparently owned by Trenton Indian Service Area (TISA). TISA is an organization of the Turtle Mountain Band of Chippewa Indians. TISA was supposedly created to provide and extend services to enrolled members of the Turtle Mountain Band of the Chippewa Indian Tribe who reside in designated areas outside of the Turtle Mountain Indian Reservation. TISA provides services to areas outside the exterior boundaries of that tribe's reservation, to-wit: portions of Williams, Divide, and McKenzie Counties in North Dakota, and portions of Roosevelt,

1. Although Gohl phrases it a number of ways, he essentially argues that due to his status as an Indian and that the gaming site is on "Indian land," or in "Indian country," the district court is without jurisdiction to hear the case.

Richland, and Sheridan Counties in Montana.

Apparently, when the Turtle Mountain Indian Reservation was established, in its present form, it was determined that the reservation was too small to support all the members of the tribe. As a result, representatives of the band and the federal government signed an agreement in 1892, which was subsequently ratified by Congress in 1904. *See* E. Robinson, *History of North Dakota*, 147–148 (1966); Hesketh, "History of the Turtle Mountain Chippewa," Volume V, *Collections of the North Dakota Historical Society*, 85, 112–114 (1923). Article VI of this agreement reads:

"ARTICLE VI. All members of the Turtle Mountain band of Chippewa Indians who may be unable to secure land upon the reservation above ceded may take homesteads upon any vacant land belonging to the United States without charge, and shall continue to hold and be entitled to such share in all tribal funds, annuities, or other property, the same as if located on the reservation: *Provided,*

That such right of alternate selection of homesteads shall not be alienated or represented by power of attorney."

*See* Act of April 21, 1904, ch. 1402, 33 Stat. 189, 195 (1904). A number of tribal members located in the Trenton area of Williams County under this arrangement.

Gohl maintains that the theft occurred in "Indian country" as defined by 18 U.S.C. § 1151 (1988). Arguably, if the theft did occur in "Indian country," as set out in 18 U.S.C. § 1151 (1988), the state district court would not have jurisdiction over the matter as jurisdiction over crimes committed in "Indian country" is primarily federal. *See* 18 U.S.C. ch. 53.[2] Crimes not under federal jurisdiction are generally under tribal jurisdiction. *But see* for the Devils Lake Sioux Tribe on the Fort Totten Indian Reservation, *State v. Hook,* 476 N.W.2d 565 (N.D.1991).

Gohl also argues that the Indian Gaming Regulatory Act preempts state jurisdiction. *See* 25 U.S.C. ch. 29 and 18 U.S.C. §§ 1166–1168 (1988).[3] Gohl argues that the gaming

---

**2.** 18 U.S.C. § 1153 (1988) gives exclusive jurisdiction to the federal courts over certain types of crimes committed by an Indian in Indian country. *United States v. Azure,* 801 F.2d 336, 338 (8th Cir.1986). 18 U.S.C. § 1153, provides:

"*§ 1153. Offenses committed within Indian country*

(a) Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, kidnapping, maiming, a felony under chapter 109A, incest, assault with intent to commit murder, assault with a dangerous weapon, assault resulting in serious bodily injury, arson, burglary, robbery, and a felony under section 661 of this title within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States."

Section 1153 only gives exclusive jurisdiction to federal courts over certain major crimes. However, federal preemption of a state's authority need not be express. "[I]t is enough that the state law conflicts with the purpose or operation of a federal statute, regulation, or policy." *Crow Tribe of Indians v. Montana,* 650 F.2d 1104, 1109 (9th Cir.1981), *amended,* 665 F.2d 1390 (9th Cir.) *cert. denied,* 459 U.S. 916, 103 S.ct. 230, 74 L.Ed.2d 182 (1982). *See also White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 144, 100 S.Ct. 2578, 2584, 65 L.Ed.2d 665 (1980). In light of the strong federal interest in tribal

sovereignty, jurisdiction for some criminal matters may well rest exclusively with tribal courts. *See generally State v. Webster,* 114 Wis.2d 418, 338 N.W.2d 474, 482–483 (1983); *Washington v. Confederated Bands and Tribes of the Yakima Indian Nation,* 439 U.S. 463, 470, 99 S.Ct. 740, 746, 58 L.Ed.2d 740 (1979).

This discussion does not address the impact of Public Law 280, Act of August 15, 1953, and its amendments. *See* 67 Stat. 588, codified as amended at 18 U.S.C. § 1162, 25 U.S.C. §§ 1321–1326, and 28 U.S.C. § 1360.

**3.** The Indian Gaming Regulatory Act (IGRA) was passed in 1988, Pub.L. No. 100–497, 102 Stat. 2467, and can be found at 25 U.S.C. ch. 29 and 18 U.S.C. §§ 1166–1168. It was designed to provide a "statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments." 25 U.S.C. § 2702(1). "Its enactment followed court decisions upholding the right of tribes to conduct public bingo games on Indian lands." *Mashantucket Pequot Tribe v. State of Connecticut,* 913 F.2d 1024, 1025 (2nd Cir.1990) (citations omitted.) It generally preempts state criminal or civil jurisdiction over Indian gaming on Indian lands unless a tribal-state compact has been reached respecting certain classes of gaming defined in the act. *See Keetoowah Indians v. State of Oklahoma,* 927 F.2d 1170, 1176–1177 (10th Cir.1991).

establishment was on "Indian lands" as defined in the act and that 18 U.S.C. sections 1167 and 1168 create specific penalties for theft from gaming establishments on "Indian lands" thereby preempting state jurisdiction.[4]

■ Although neither party addressed the issue, this Court's initial inquiry must be whether or not we have jurisdiction to hear this appeal. The statutory basis governing an appeal such as is present in this case is set forth in section 29–28–06, N.D.C.C. It provides:

"An appeal may be taken by the defendant from:

1. A verdict of guilty;

2. A final judgment of conviction;

3. An order refusing a motion in arrest of judgment;

4. An order denying a motion for a new trial; or

5. An order made after judgment affecting any substantial right of the party."

Nothing in section 29–28–06 authorizes an appeal from a denial of a defendant's motion to dismiss the prosecution against him. *State v. Johnson,* 142 N.W.2d 110, 111 (N.D.1966); *see also State v. Rippley,* 319 N.W.2d 129, 131 (N.D.1982). The right of appeal is governed solely by statute in this state. *City of Riverside v. Smuda,* 339 N.W.2d 768, 769 (N.D.1983). Without any statutory basis to hear an appeal, this Court must take notice of the lack of jurisdiction and dismiss the appeal. *Id.* Thus, Gohl's appeal must be dismissed.

■ Because of the lack of crucial facts in the record before us, we also decline on our own volition to treat this appeal as an application for a supervisory writ.[5] As the parties maintain, one of the crucial issues in determining whether or not the district court has jurisdiction is whether or not the theft occurred in "Indian country." "Indian country" is defined in 18 U.S.C. § 1151 (1988) as follows:

"Except as otherwise provided in sections 1154 and 1156 of this title, the term 'Indian country', as used in this chapter, means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which

(A) all lands within the limits of any Indian reservations; and

(B) any lands title to which is either held in trust by the United States for the benefit of any Indian tribe or individual or held by any Indian tribe or individual subject to restriction by the United States against alienation and over which an Indian tribe exercises governmental power."

4. We do not voice any opinion on the merit of such an argument.

5. We have previously, in exercising discretion in conjunction with our supervisory jurisdiction, treated an appeal found to be nonappealable as an application for a supervisory writ. *See Vorachek v. Citizens State Bank of Lankin,* 461 N.W.2d 580, 584 (N.D.1990); *Thompson v. Goetz,* 455 N.W.2d 580, 583 (N.D.1990) (citing *Garrison Memorial Hospital v. Rayer,* 453 N.W.2d 787 (N.D.1990); *Odden v. O'Keefe,* 450 N.W.2d 707 (N.D.1990); *Minot Daily News v. Holum,* 380 N.W.2d 347 (N.D.1986)). However, due to the lack of essential facts in the record, we will not do so in this criminal case.

One part of IGRA, 18 U.S.C. § 1167 (1988), entitled "Theft from gaming establishments on Indian lands" provides:

"(a) Whoever abstracts, purloins, willfully misapplies, or takes and carries away with intent to steal, any money, funds, or other property of a value of $1,000 or less belonging to an establishment operated by or for or licensed by an Indian tribe pursuant to an ordinance or resolution approved by the National Indian Gaming Commission shall be fined not more than $100,000 or be imprisoned for not more than one year, or both.

"(b) Whoever abstracts, purloins, willfully misapplies, or takes and carries away with intent to steal, any money, funds, or other property of a value in excess of $1,000 belonging to a gaming establishment operated by or for or licensed by an Indian tribe pursuant to an ordinance or resolution approved by the National Indian Gaming Commission shall be fined not more than $250,000, or imprisoned for not more than ten years, or both."

Pertinent is 25 U.S.C. § 2703(4), which reads:

"(4) The term 'Indian lands' means—

have not been extinguished, including rights-of-way running through the same."

As the area around Trenton is not within the confines of an Indian reservation, this issue seems to be whether or not the area could be deemed a "dependent Indian community," or, whether or not the land in the area and where the gaming establishment is situated is "allotted land." As Attorney General Nicholas Spaeth noted in a letter, dated February 15, 1990, to the Williams County State's Attorney, both questions are essentially factual in nature. The record before us discloses few facts relevant to resolving this matter.

There is nothing in the record to indicate how title to the land in the Trenton area and, specifically, the gaming site, is held. The State, in its brief and oral argument, stated that some land in the area is owned by TISA, some is owned by the reservation, and some is owned by individuals. We do not know from this what type of title the tribe has nor do we know how it acquired the title.

There are no affidavits of TISA, Williams County, or other officials in the record disclosing such facts as "the nature of the area in question, the relationship of the inhabitants [in the area] to the tribe and to the federal government, the established practice of government agencies toward the area, and the cohesiveness of the community." *United States v. State of South Dakota*, 665 F.2d 837, 843 (8th Cir.1981). There is nothing in the record which indicates whether or not there are any common economic pursuits, interests, or needs of the Indian population. *See United States v. Morgan*, 614 F.2d 166, 170 (8th Cir.1980). There is nothing in the record which indicates how federally dependent the Indian population is. *See United States v. Levesque*, 681 F.2d 75, 77 (1st Cir.1982). The record contains no figures or statistics which may well be available through TISA, other organizations of the Turtle Mountain Indian Reservation, the Bureau of Indian Affairs, or other governmental bodies. In summary, the record in its present state

does not contain facts from which we could determine whether or not the theft occurred in "Indian country."

Likewise, there is nothing in the record from which we could determine whether or not the TISA gaming site was on "Indian lands" within the meaning of the Indian Gaming Regulatory Act. In fact, there is nothing in the record from which we could determine whether or not the TISA gaming site is under the auspices of the National Gaming Commission.

Having previously determined that section 29–28–06, N.D.C.C., does not authorize Gohl's appeal, the appeal is dismissed.

LEVINE, GIERKE and MESCHKE, JJ., concur.

VANDE WALLE, J., concurs in the result.