2016 ND 234

Paul J. FREDERICKS, Plaintiff
and Appellee

v.

Lyndon B. FREDERICKS, Defendant,
Appellant and Cross–Appellee

and

Bole Resources, LLC, Kodiak Oil & Gas,
Inc., Exok, Inc., Randy Folk, CNR In-
vestments, LLC, Brooks Energy, Inc.,
Waitman Group, LLC, Relyk, LLC,
and Dale Eubank, Defendants

Bole Resources, LLC, Randy Folk, CNR
Investments, LLC, Brooks Energy,
Inc., Waitman Group, LLC, Relyk,
LLC, and Dale Eubank, Defendants,
Appellees and Cross–Appellants

No. 20150359

Supreme Court of North Dakota.

Filed 12/9/2016

Rehearing Denied Feb. 22, 2017

Monte L. Rogneby, Bismarck, ND, for plaintiff and appellee.

Harry M. Pippin, Williston, ND, for defendants, appellees and cross-appellants.

Charles M. Carvell, Bismarck, ND, for defendant, appellant and cross-appellee.

Sandstrom, Justice.

[¶ 1] Lyndon Fredericks appeals, and Bole Resources, LLC, and others ("Bole defendants") cross-appeal from a judgment declaring the district court had subject-matter jurisdiction over the action, reforming a quit claim mineral deed, quieting title in the mineral interests in Paul Fredericks, and ordering Lyndon Fredericks to pay the Bole defendants damages plus interest and their attorney fees. Because we conclude the district court correctly ruled it had subject-matter jurisdiction, its findings of fact are not clearly erroneous, and it did not abuse its discretion, we affirm.

I

[¶ 2] Kenneth Fredericks was the father of Paul Fredericks, Lyndon Fredericks, and Kenneth Fredericks Jr. In 1985, Paul Fredericks and his wife executed a quit claim mineral deed transferring their interest in certain Dunn County minerals located in fee land on the Fort Berthold Indian Reservation to Kenneth Fredericks "as joint tenants and not as tenants in common, their heirs and assigns, the survivor of the Transferees, the heirs and assigns of the survivor." The district court found Kenneth Fredericks and his sons, Paul and Lyndon Fredericks, were enrolled members of the Three Affiliated Tribes but did not reside on the reservation during the relevant period. After Kenneth Fredericks died in 1988, his estate was probated in tribal court, but the fee land mineral interest he had received in 1985 was not addressed in those proceedings.

[¶ 3] In 2001, the remainder of Kenneth Fredericks' estate, including the fee land mineral interest, was probated in state court. Kenneth Fredericks Jr. served as personal representative, and a personal representative's deed was issued transferring the mineral interests to Lyndon Fredericks. Paul Fredericks was not given notice of the state court probate proceedings. In February 2012, Lyndon Fredericks sold the mineral interests through warranty

deeds to the Bole defendants, who are not members of the tribe.

[¶ 4] In June 2012, Paul Fredericks sued Lyndon Fredericks and the Bole defendants in state court to quiet title to the minerals in his name, claiming the 1985 mineral deed should be reformed because of a mutual mistake that he was supposed to be listed as the joint tenant with his father. The Bole defendants cross-claimed against Lyndon Fredericks for breach of warranty of title. After a bench trial, the district court reformed the deed and quieted title to the mineral interests in Paul Fredericks. The court also ordered Lyndon Fredericks to pay the Bole defendants $120,000 in damages plus interest for the breach of warranty claim and $56,728.44 for their attorney fees and costs in defending the action. Lyndon Fredericks filed a motion to vacate the judgment, claiming his status as a tribal member deprived the court of jurisdiction because the underlying dispute involved title to minerals located on the reservation. The court denied the motion.

## II

[¶ 5] Lyndon Fredericks argues the district court lacked subject-matter jurisdiction because he is a tribal member and "resident" of the reservation and "the dispute concerns title to minerals on the reservation."

[¶ 6] Subject-matter jurisdiction cannot be conferred by agreement, consent, or waiver, and issues involving subject-matter jurisdiction can be raised by the court or a party at any time in a proceeding. *See State v. Lavallie*, 2015 ND 74, ¶ 4, 861 N.W.2d 168; *State ex rel. Workforce Safety & Ins. v. JFK Raingutters*, 2007 ND 80, ¶ 9, 733 N.W.2d 248. When the jurisdictional facts are not in dispute, we review the district court's decision on subject-matter jurisdiction de novo.

*See Winer v. Penny Enters., Inc.*, 2004 ND 21, ¶ 8, 674 N.W.2d 9. If the underlying jurisdictional facts are disputed, this Court is presented with a mixed question of law and fact, and we review the question of law de novo and the district court's findings of fact under the clearly erroneous standard of review. *See Lavallie v. Lavallie*, 2015 ND 69, ¶ 7, 861 N.W.2d 164. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, upon review of the entire record, this Court believes a mistake has been made. *See State v. Arot*, 2013 ND 182, ¶ 7, 838 N.W.2d 409.

[¶ 7] The district court made the following findings regarding the jurisdictional facts. Paul Fredericks, Lyndon Fredericks, and Kenneth Fredericks were enrolled members of the Three Affiliated Tribes, but none of them resided on the reservation during the relevant period. Although Lyndon Fredericks claims he "lives" on the reservation, he does not challenge the court's finding he did not live there during the relevant time period. The property involved, although located on the reservation, is fee land rather than trust land. The 1985 deed at issue was executed off of the reservation. Although Kenneth Fredericks' interests in trust property were probated in tribal court, his interest in the fee property was probated in state district court. At the time this action began, the Bole defendants, who are non-Indian, were the record title holders of the fee land. Only as a result of this state court action does a tribal member, Paul Fredericks, have an ownership interest in the fee land mineral interests.

[¶ 8] In analyzing jurisdiction, the district court relied on the United States Supreme Court's decision in *Plains Commerce Bank v. Long Family Land and Cattle Co., Inc.*, 554 U.S. 316, 320, 128 S.Ct. 2709, 171 L.Ed.2d 457 (2008), in

which the Court held a tribal court did not have jurisdiction to adjudicate a discrimination claim concerning a non-Indian bank's sale of fee land it owned. In *Plains Commerce Bank*, the Longs, enrolled members of the tribe, were majority owners of a family-run ranching and farming company and received loans from the Bank in exchange for a mortgage on fee land inside the reservation which was owned by the father of one of the Longs, a non-Indian. *Id.* at 320–21, 128 S.Ct. 2709. The Bank had no ties to the reservation other than business dealings with its members. *Id.* at 321, 128 S.Ct. 2709. After the father's death, the Longs and the Bank entered into a new loan agreement in which the Longs deeded the mortgaged fee acreage to the Bank in exchange for additional operating loans and a lease of the property with an option to purchase. *Id.* at 321, 128 S.Ct. 2709. The Longs were unable to exercise the option at the end of the lease term and refused to vacate the property, which resulted in a state court eviction action and the Bank's sale of the property to other nonmembers of the tribe. *Id.* at 322, 128 S.Ct. 2709. The Longs sued the Bank in tribal court, alleging, among other things, that the Bank discriminated against them by selling the land to nonmembers on terms more favorable than those offered to them. *Id.* After the tribal court rejected the Bank's claim that it lacked jurisdiction, a jury awarded the Longs $750,000. *Id.* at 322–23, 128 S.Ct. 2709.

[¶ 9] In ruling the tribal court lacked jurisdiction to adjudicate the discrimination claim, the Supreme Court noted the general rule restricting tribal authority over nonmember activities is "particularly strong" when the nonmember activity occurs on land owned in fee simple by non-Indians and explained:

Our cases have made clear that once tribal land is converted into fee simple, the tribe loses plenary jurisdiction over it. See *County of Yakima [v. Confederated Tribes and Bands of Yakima Nation*, 502 U.S. 251, 267–268, 112 S.Ct. 683, 116 L.Ed.2d 687 (1992),] (General Allotment Act permits Yakima County to impose ad valorem tax on fee land located within the reservation); *Goudy v. Meath*, 203 U.S. 146, 149–50 [27 S.Ct. 48, 51 L.Ed. 130] (1906) (by rendering allotted lands alienable, General Allotment Act exposed them to state assessment and forced sale for taxes); *In re Heff*, 197 U.S. 488, 502–503 [25 S.Ct. 506, 49 L.Ed. 848] (1905) (fee land subject to plenary state jurisdiction upon issuance of trust patent (superseded by the Burke Act, 34 Stat. 182, 25 U.S.C. § 349 (2000 ed.))). Among the powers lost is the authority to prevent the land's sale, see *County of Yakima, supra*, at 263 [112 S.Ct. 683] (General Allotment Act granted fee holders power of voluntary sale)—not surprisingly, as "free alienability" by the holder is a core attribute of the fee simple, C. Moynihan, Introduction to Law of Real Property § 3, p. 32 (2d ed. 1988). Moreover, when the tribe or tribal members convey a parcel of fee land "*to non-Indians*, [the tribe] loses any former right of absolute and exclusive use and occupation of the conveyed lands." *South Dakota v. Bourland*, 508 U.S. 679, 689 [113 S.Ct. 2309, 124 L.Ed.2d 606] (1993) (emphasis added). This necessarily entails "the loss of regulatory jurisdiction over the use of the land by others." *Ibid.* As a general rule, then, "the tribe has no authority itself, by way of tribal ordinance or actions in the tribal courts, to regulate the use of fee land." *Brendale v. Confederated Tribes and Banks [Bands] of Yakima Nation*, 492 U.S. 408, 430 [109 S.Ct.

2994, 106 L.Ed.2d 343] (1989) (opinion of White, J.).

We have recognized two exceptions to this principle, circumstances in which tribes may exercise "civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands." *Montana [v. United States]*, 450 U.S. [544,] 565 [101 S.Ct. 1245, 67 L.Ed.2d 493 (1981)]. First, "[a] tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." *Ibid.* Second, a tribe may exercise "civil authority over the conduct of non-Indians on fee lands within the reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." *Id.;* at 566 [101 S.Ct. 1245]. These rules have become known as the *Montana* exceptions, after the case that elaborated them. By their terms, the exceptions concern regulation of "the *activities* of nonmembers" or "the *conduct* of non-Indians on fee land."

*Plains Commerce Bank*, 554 U.S. at 328–30, 128 S.Ct. 2709.

[¶ 10] The Supreme Court held neither of the *Montana* exceptions applied. *Plains Commerce Bank*, 554 U.S. at 330–41, 128 S.Ct. 2709. The Court ruled the sale of non-Indian fee land is not nonmember "conduct" or "activities" within the meaning of *Montana*. *Id.* at 332, 334, 341, 128 S.Ct. 2709. *See also Cohen's Handbook of Federal Indian Law*, § 4.02[3][c], at p. 241 (Nell Jessup Newton ed., 2012) (*Montana* exceptions do not apply "to contests with nonmembers over land ownership or the sale of land." (footnote omitted)). The Court explained:

Nor can regulation of fee land sales be justified by the tribe's interests in protecting internal relations and self-gov-

ernment. Any direct harm to its political integrity that the tribe sustains as a result of fee land sale is sustained at the point the land passes from Indian to non-Indian hands. It is at that point the tribe and its members lose the ability to use the land for their purposes. Once the land has been sold in fee simple to non-Indians and passed beyond the tribe's immediate control, the mere resale of that land works no additional intrusion on tribal relations or self-government. Resale, by itself, causes no additional damage.

*Plains Commerce Bank*, 554 U.S. at 336, 128 S.Ct. 2709. The Court further noted under the second *Montana* exception the conduct "must 'imperil the subsistence' of the tribal community" and "that tribal power must be necessary to avert catastrophic consequences." *Id.* at 341, 128 S.Ct. 2709 (internal citations omitted). The Court said, "The sale of formerly Indian-owned fee land to a third party is quite possibly disappointing to the Tribe, but cannot fairly be called 'catastrophic' for tribal self-government." *Id.*

[¶ 11] The district court correctly relied upon *Plains Commerce Bank* in ruling the *Montana* exceptions did not apply and the tribal court had no jurisdiction. The court noted the real property at issue was non-Indian fee land, Kenneth Fredericks acquired the property in 1965, and the record did not reflect whether he acquired the property from tribal members. Paul Fredericks and his wife acquired the property in 1979 and executed the 1985 quit claim deed to Kenneth Fredericks "as joint tenants" off of the reservation. Kenneth Fredericks' interest in trust property was probated in tribal court, but his interest in the fee land was probated in state court, which resulted in the personal representative's deed transferring the property to Lyndon Fredericks. Lyndon Fredericks conveyed

his interest in the property to the Bole defendants in 2012, and there is no evidence that any of the Bole defendants were tribal members. Although Paul Fredericks, Lyndon Fredericks, and Kenneth Fredericks were enrolled members of the tribe, none of them resided on the reservation when the 1985 deed was executed. These findings are not clearly erroneous. The court concluded "neither the sale, nor the incidents of the sale, of fee land located within the boundaries of the reservation intrude on the internal relations of the tribe or threaten tribal self-rule or otherwise affect the political integrity, economic security, or the health or welfare of the tribe." We agree that the tribal court lacked jurisdiction over this controversy.

[¶ 12] While *Montana* governs tribal court jurisdiction, state court jurisdiction is determined under the test set forth in *Williams v. Lee*, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959). *See Arrow Midstream Holdings, LLC v. 3 Bears Constr., LLC*, 2015 ND 302, ¶ 10, 873 N.W.2d 16. Under that test, " 'absent congressional action, the question is whether the state action infringes on the right of reservation Indians to make their own laws and be ruled by them.' " *Id.* at ¶ 25 (quoting *Byzewski v. Byzewski*, 429 N.W.2d 394, 396 (N.D. 1988)). We agree with the district court's conclusion that, for many of the same reasons the *Montana* exceptions did not apply, the state court action regarding the "sale of fee land located within the exterior boundaries of the reservation does not intrude on the right of the reservation to make their own laws and be ruled by them."

[¶ 13] Lyndon Fredericks argues the state court lacks jurisdiction because North Dakota has disclaimed jurisdiction over Indian reservation lands under N.D.C.C. ch. 27–19. *See Gustafson v. Estate of Poitra*, 2011 ND 150, ¶ 13, 800

N.W.2d 842 ("Under N.D.C.C. ch. 27–19, state courts may have jurisdiction over civil causes of action arising within the exterior boundaries of a reservation, if Indian citizens of the reservation have accepted state court jurisdiction."). However, unlike the situation in *Gustafson*, at ¶ 14, we have concluded the tribal court lacks jurisdiction. The absence of tribal court jurisdiction is a factor to be considered in determining whether state court jurisdiction exists. *See Arrow Midstream Holdings, LLC*, 2015 ND 302, ¶¶ 10, 27, 873 N.W.2d 16. Under these circumstances, the United States Supreme Court has strongly suggested a state must "allow[ ] an Indian to enter its court to seek relief against a non-Indian concerning a claim arising in Indian country." *Three Affiliated Tribes v. Wold Eng'g*, 476 U.S. 877, 888, 106 S.Ct. 2305, 90 L.Ed.2d 881 (1986); *see also Rolette County Soc. Serv. Bd. v. B.E.*, 2005 ND 101, ¶ 6, 697 N.W.2d 333 ("Relative to the issue of state court jurisdiction, if there is an available forum in the tribal courts, considerations of tribal sovereignty and the federal interest in promoting Indian self-governance and autonomy arise."); *Davis v. Dir., N.D. Dep't of Transp.*, 467 N.W.2d 420, 422 (N.D. 1991). ("However, we were recently reminded by the United States Supreme Court that, notwithstanding our skittishness over exercising state jurisdiction, we must provide Indian plaintiffs access to our courts to seek relief against non-Indians when no other court is available to them."). The fee land here has been divested from tribal control, and both Paul Fredericks and Lyndon Fredericks have treated it as non-Indian property throughout the relevant period. We conclude the state court had subject matter jurisdiction over this lawsuit.

[¶ 14] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal and the

cross-appeal are timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

## III

[¶ 15] Lyndon Fredericks and the Bole defendants argue Paul Fredericks failed to prove he was entitled to reformation of the 1985 mineral deed. They argue the court erred in ruling the Bole defendants were not good-faith purchasers precluding reformation. They also argue the court erred in failing to rule Paul Fredericks' lawsuit was barred by laches.

[¶ 16] Section 32–04–17, N.D.C.C., provides:

When, through fraud or mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved so as to express that intention so far as it can be done without prejudice to rights acquired by third persons in good faith and for value.

"The party seeking reformation of a written instrument must establish by clear and convincing evidence that the document does not state the parties' intended agreement." See Johnson v. Hovland, 2011 ND 64, ¶ 12, 795 N.W.2d 294. Whether a contract contains a mistake sufficient to support a claim for reformation is a question of fact which will not be set aside on appeal unless it is clearly erroneous. See Spitzer v. Bartelson, 2009 ND 179, ¶ 23, 773 N.W.2d 798.

[¶ 17] The district court issued a 27–page memorandum opinion detailing the evidence and explaining its decision on the various issues, which is summarized by the court's findings of fact and conclusions of law. The court found that in 1985, Kenneth Fredericks asked Paul Fredericks and his wife to convey the minerals to him so he could collect oil and gas lease payments during his lifetime and have Paul Fredericks own the minerals after his death, and in pursuance of that goal, they intended the conveyance to name them as joint tenants. However, the deed contained an error by creating a joint tenancy in a single grantee. Kenneth Fredericks' will details his real and personal property, and his trust property devised to his children, but does not mention the fee property at issue here, which the court found created an inference that he believed this property would not pass through his estate. See Matter of Estate of Pedersen, 431 N.W.2d 281, 283 n.1 (N.D. 1988) (joint tenancy property is not included as a probate asset).

[¶ 18] In July 2001, when Kenneth Fredericks' will was probated in state court, Paul Fredericks did not receive notice of the proceedings. The court found Lyndon Fredericks "sought to secrete information about the 2001 probate action" from Paul Fredericks, even though Lyndon Fredericks knew about Paul Fredericks' claim to the property. Paul Fredericks did not learn of the error in the deed until 2007. The court concluded the deed naming a single grantee " 'as joint tenants' is an obvious error sufficient to put a prudent person on inquiry notice" and therefore Lyndon Fredericks and the Bole defendants had constructive notice of the "obvious error" in the deed. The Bole defendants failed to conduct any inquiry into the obvious error contained in the deed and "as a result are not good faith purchasers for value" under N.D.C.C. § 32–04–17. The court concluded, because Lyndon Fredericks did not act in good faith, he was not entitled to invoke the equitable doctrine of laches. The court concluded reformation was appropriate based on a mutual mistake of the parties to the 1985 deed.

## A

[¶ 19] Lyndon Fredericks and the Bole defendants argue the district court erred in deciding Paul Fredericks provided clear and convincing evidence that a mutual mistake was made sufficient to provide him with ownership of the disputed mineral interests.

[¶ 20] The district court noted that during Paul Fredericks' testimony, "he had difficulty articulating what was the intention of the parties in terms of which legal form the transfer . . . should take," but that "regardless of the legal scenarios or form of ownership, Paul was clear and consistent in his testimony that it was intended that he would be the owner of the minerals following his father's death." The court further noted Debra Entzel, Paul Fredericks' former "common-law" wife who participated in the discussions during the early 1980s regarding the 1985 transfer, provided "unrebutted testimony that it was the intention of the parties that Paul would be a grantee as a joint tenant and that he was to become the owner of the minerals upon" his father's death. The court also noted that Paul Fredericks' wife and Lyndon Fredericks testified Lyndon Fredericks knew before 2001 that Paul Fredericks had been claiming ownership of the mineral interest "for a long time." The court said:

> The Court finds, on the basis of Lyndon's testimony, that Paul had been claiming for years that he was the owner of the minerals in question. The Court further finds that those claims were made at times following the death of Kenneth J. Fredericks and before he learned that they had been deeded to Lyndon. The Court finds that Paul's belief that he owned the minerals after his father's death and before the minerals were conveyed to Lyndon by Kenneth J. Fredericks [Jr.], Personal Representa-

tive is very strong evidence that it was the intention of the parties that Paul be a joint tenant. No other logical alternative except that Paul was intended to be a joint tenant owner of the minerals would explain that belief. That is especially true when viewed in conjunction with facts that:

1. [1985 quit claim deed] references joint tenancy;

2. Debra Entzel, a party to the transaction, gave corroborative testimony, saying that it was intended that Paul was to be a joint tenant;

3. That no meaningful consideration was paid to Paul or Debra Entzel for the conveyance;

4. That Kenneth J. Fredericks' rather detailed Will did not reference the minerals in question; and

5. No evidence of a contrary intention was presented.

> Based upon a review of evidence as set forth herein above, the Court finds, based upon clear and convincing evidence . . . that it was the intention of the parties to the quit claim deed . . . that the mineral interests of Paul Fredericks and Debra Fredericks would convey the minerals at issue to Paul Fredericks and Kenneth J. Fredericks as joint tenants.

[¶ 21] The arguments of Lyndon Fredericks and the Bole defendants essentially attack Paul Fredericks' credibility. "The task of weighing the evidence and judging the credibility of witnesses belongs exclusively to the trier of fact, and we do not reweigh credibility or resolve conflicts in the evidence." *Greywind v. State*, 2004 ND 213, ¶ 22, 689 N.W.2d 390. Upon our review of the evidence, we conclude the district court's finding that Paul Fredericks established a mistake sufficient to justify reformation of the 1985 quit claim deed is not clearly erroneous.

## B

■ [¶ 22] Lyndon Fredericks and the Bole defendants argue the district court erred in deciding the Bole defendants were not good-faith purchasers for value.

■ [¶ 23] Section 1–01–21, N.D.C.C., defines "good faith" as "an honest intention to abstain from taking any unconscientious advantage of another even through the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious." Whether a party acted in good faith is a question of fact. *See Farmers Union Oil Co. v. Smetana*, 2009 ND 74, ¶ 15, 764 N.W.2d 665. In *Smetana*, at ¶ 16, we further explained:

> In *Diocese of Bismarck Trust v. Ramada, Inc.*, 553 N.W.2d 760, 768 (N.D. 1996) (citations omitted), this Court addressed the concepts of good faith and notice in the context of reformation of a deed under N.D.C.C. § 32–04–17:
>
> > Under N.D.C.C. § 32–04–17, a good faith purchaser must acquire rights without actual or constructive notice of another's rights. Actual notice consists of express information of a fact, N.D.C.C. § 1–01–23, while constructive notice is notice imputed by law to a person having no actual notice. N.D.C.C. § 1–01–24.
> >
> > Under N.D.C.C. § 1–01–25, a person who has actual notice of circumstances sufficient to put a prudent person upon inquiry as to a particular fact and who omits to make an inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself. The issues of good faith and constructive notice are similar in that they both require an examination of the information possessed by a person. The information, however, need not be so detailed as to communicate a complete description of an opposing interest; instead, the information must be sufficient to assert the existence of an interest as a fact, which in turn gives rise to a duty to investigate. In making inquiry, a person must exercise reasonable diligence; a superficial inquiry is not enough.
>
> A party's status as a good faith purchaser without notice of a competing interest is a mixed question of fact and law. The factual circumstances relating to events surrounding the transaction—the realities disclosed by the evidence as distinguished from their legal effect—constitute the findings of fact necessary to determine whether a party has attained the status of a good faith purchaser without notice. A court's ultimate determination that a party is not a good faith purchaser for value is a conclusion of law, because that determination describes the legal effect of the underlying factual circumstances.

A purchaser who fails to make the requisite inquiry cannot claim good-faith purchaser status and will be charged with constructive notice of all facts that the inquiry would have revealed. *See Swanson v. Swanson*, 2011 ND 74, ¶ 10, 796 N.W.2d 614. Purchasers of property are charged with constructive notice of the contents of duly recorded documents. *See Bakken v. Duchscher*, 2013 ND 33, ¶ 15, 827 N.W.2d 17.

[¶ 24] In this case, the district court noted the 1985 deed was duly recorded and the reference in the deed to joint tenants when only one grantee was named constituted an "obvious error" sufficient to put a prudent person upon inquiry under N.D.C.C. § 1–01–25. The court found that a landman was the only person to review the deed in the course of his title examination for the Bole defendants, and he did not reference the discrepancy in the title

report because "he simply concluded that it was the term joint tenant that was mistakenly included, relying on how he was taught." The court rejected the Bole defendants' argument that they were justified in relying on the landman's title report and were not required to conduct any additional title examinations. The court found the Bole defendants "knew or should have known of the problematic situation created by that error," and "[r]egardless ... whether they may believe that they were justified in relying upon [the landman], they are not shielded by their choice to rely upon [the landman]."

[¶ 25] Lyndon Fredericks and the Bole defendants argue the district court erred in deciding they did not act in good faith because "[n]umerous attorneys and mineral title experts ha[d] reviewed, studied, and analyzed the subject 1985 deed" before their transactions occurred. A basic principle of property law, however, is that a joint tenancy must involve a conveyance to two or more persons. *See Renz v. Renz*, 256 N.W.2d 883, 885 (N.D. 1977); N.D.C.C. § 47–02–06. A prudent person, particularly one trained to perform title examinations, should have known a joint tenancy naming only one tenant creates a troublesome discrepancy requiring further investigation.

[¶ 26] Additionally, the Bole defendants cannot claim reasonable reliance on the landman's title examination to secure good-faith purchaser status. In *Borth v. Gulf Oil Expl. & Prod. Co.*, 313 N.W.2d 706, 707–08 (N.D. 1981), Batts, on the basis of a title opinion from an abstract company, informed the lessors that they owned only 60 rather than 80 mineral acres under his oil and gas lease. Batts assigned his lease to Gulf Oil, which thereafter made delayed rental payments to the lessors based on ownership of 60 mineral acres. *Id.* at 708. The lessors eventually hired an attorney to review title and the attorney concluded the lessors owned 80 mineral acres. *Id.* The lessors sued Gulf Oil to cancel the lease, and the district court concluded the lease was valid as to 60 mineral acres but terminated the lease as to the 20 mineral acres. *Id.* at 709. This Court ruled each of the parties were chargeable with the failure to properly ascertain the correct number of acres involved in the lease, explaining:

[Under] NDCC § 47–19–19 the recording of a deed is notice of the contents of the deed as to all persons. In this instance Batts and Gulf Oil are chargeable with having notice of the contents of the record title of the property in question. Further, Gulf Oil received the title memorandum from Batts that set out the chain of title to the land, but the record reflects that Gulf Oil did not examine the title memorandum nor did it examine any of the original records on file. The district court made a finding of fact to that effect and that finding is not clearly erroneous. The testimony of Michael Smith, attorney for Gulf Oil, suggests that if Gulf Oil had examined the records available to them they would have been on notice that additional examination was required. Rather, the testimony of Don R. Fisher, lease rental supervisor for Gulf Oil, reflects that in situations such as this Gulf Oil "simply relies on the thoroughness of the assignor [Batts] who researched the chain of title at the county courthouse." Although Gulf Oil asserts that it relied in good faith upon the determination made by Batts concerning the title to the oil and gas estate, we believe that Batts' conduct is chargeable to Gulf Oil and that Gulf Oil also should have examined the records available to them and that this conduct precipitated the insufficient delayed rental payments.

*Id.* at 710. Under this reasoning, the landman's conduct is chargeable to the Bole defendants, which deprives them of good-faith purchaser status.

[¶ 27] We conclude the district court did not err in concluding the Bole defendants were not good-faith purchasers for value.

### C

[¶ 28] Lyndon Fredericks and the Bole defendants argue the district court erred in ruling Paul Fredericks' action was not barred by laches.

[¶ 29] "The party against whom laches is sought to be invoked must be actually or presumptively aware of his rights and must fail to assert them against a party who in good faith permitted his position to become so changed that he could not be restored to his former state." *Bakken*, 2013 ND 33, ¶ 19, 827 N.W.2d 17. The equitable doctrines of estoppel and laches are unavailable to a party who does not come into equity with "clean hands." *Borth*, 313 N.W.2d at 711. The district court found Lyndon Fredericks "does not come to Court with clean hands" because he knew of Paul Fredericks' claimed ownership of the disputed minerals and his actions in secreting the 2001 probate proceedings from Paul Fredericks to obtain the personal representative's deed. Furthermore, a party who is not a good-faith purchaser cannot rely on the doctrines of equitable estoppel and laches. *See Swanson*, 2011 ND 74, ¶ 21, 796 N.W.2d 614; *Burlington N., Inc. v. Hall*, 322 N.W.2d 233, 239–40, 242 (N.D. 1982). The court found the Bole defendants were not good-faith purchasers.

[¶ 30] We conclude the district court did not err in rejecting the laches defense.

### IV

[¶ 31] Lyndon Fredericks argues the district court erred in awarding attorney fees to the Bole defendants and erred in awarding interest on the damage award.

### A

[¶ 32] Under N.D.C.C. § 32–03–11(3), damages for breach of a warranty covenant in a grant of an estate in real property include "[a]ny expense properly incurred by the covenantee in defending the covenantee's possession." Lyndon Fredericks argues the Bole defendants' attorney fees were not properly incurred because he "retained counsel and actively defended title throughout the case."

[¶ 33] Attorney fee awards are matters addressed to the sound discretion of the district court. *See, e.g., Cassady v. Souris River Tel. Coop.*, 520 N.W.2d 803, 807 (N.D. 1994). A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned determination, or it misinterprets or misapplies the law. *See Ritter, Laber and Assocs., Inc. v. Koch Oil, Inc.*, 2007 ND 163, ¶ 21, 740 N.W.2d 67.

[¶ 34] Lyndon Fredericks warranted title to the mineral interests in the deed to Bole Resources, LLC, and agreed in that deed to defend title. This is not a case in which Lyndon Fredericks offered to defend title and the Bole defendants rejected the offer. *See, e.g., Sorenson. v. Safety Flate, Inc.*, 306 Minn. 300, 235 N.W.2d 848, 853 (1975) (generally there may be no recovery of attorney fees if the party rejects an offer to defend because the expense could have been avoided at no cost). Rather, the Bole defendants in their cross-claim against Lyndon Fredericks specifically requested that he "indemnify and defend" them. In his answer, Lyndon Fredericks did not agree to do so, but claimed numerous affirmative defenses to the request.

We conclude the district court did not abuse its discretion in awarding the Bole defendants "$56,728.44 representing legal fees and costs incurred in defending title."

### B

[¶ 35] Under N.D.C.C. § 32–03–11(2), damages for breach of a warranty deed include "[i]nterest ... for the time during which the grantee derived no benefit from the property, not exceeding six years." The district court awarded interest on the $120,000 damage award "at the legal rate from February 20, 2012 to the present date." February 20, 2012, was the effective date of the warranty deed conveying the mineral interests to Bole Resources, LLC. Lyndon Fredericks argues the district court erred because the Bole defendants failed to show they derived no benefit from the property during that time period.

[¶ 36] We apply the abuse of discretion standard when reviewing the district court's decision when to commence an award of interest. *See PHI Fin. Servs., Inc. v. Johnston Law Office, P.C.*, 2016 ND 20, ¶ 33, 874 N.W.2d 910. The district court appears to have ruled Lyndon Fredericks breached the warranty clause on the effective date of the 2012 mineral deed. This lawsuit has caused the Bole defendants to lose any benefits they may have enjoyed from their purchases. We conclude the court did not abuse its discretion in awarding interest from February 20, 2012.

### V

[¶ 37] We do not address other arguments raised, because they are either unnecessary to the decision or are without merit. The judgment is affirmed.

[¶ 38] Lisa Fair McEvers

Allan L. Schmalenberger, S.J.

William A. Neumann, S.J.

Gerald W. VandeWalle, C.J.

[¶ 39] The Honorable Allan L. Schmalenberger, S.J., and the Honorable William A. Neumann, S.J., sitting in place of Kapsner, J., and Crothers, J., disqualified.