# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2022 ND 87

Trenton Indian Housing Authority,                        Plaintiff and Appellee

     v.

Lisa Poitra,                                                           Defendant and Appellant

     and

All Other Unknown Occupants,                                           Defendants

### No. 20210302

Appeal from the District Court of Williams County, Northwest Judicial District, the Honorable Joshua B. Rustad, Judge.

AFFIRMED.

Opinion of the Court by Jensen, Chief Justice.

Jordon J. Evert (argued) and Dustin A. Richard (on brief), Williston, ND, for plaintiff and appellee.

Alexander S. Turner , Minot, ND, for defendant and appellant.

**Jensen, Chief Justice.**

[¶1]   Lisa Poitra appeals from an order of eviction arguing that the district court lacked jurisdiction to enter the eviction order because the Trenton Indian Housing Authority ("TIHA") constitutes a dependent Indian community, and a contract provision requires the eviction to be handled by the Turtle Mountain Band of Chippewa Indians Tribal Court. We conclude the record supports the district court's finding that TIHA is not a dependent Indian community, the court's determination it had subject matter jurisdiction, and the finding TIHA did not have a contractual obligation to bring the eviction action in the tribal court.

I

[¶2]   Poitra is an enrolled member of the Turtle Mountain Band of Chippewa Indians (hereinafter "Turtle Mountain"). She lives in a housing unit operated by TIHA and located within the Trenton Indian Service Area ("TISA"). The TISA is approximately 240 miles away from the Turtle Mountain reservation.

[¶3]   TIHA initiated this eviction against Poitra in the North Dakota district court. Poitra asserted the state court lacked subject matter jurisdiction and moved to dismiss the eviction action. The court denied Poitra's motion to dismiss.

[¶4]   During the subsequent eviction hearing, Poitra renewed her motion to dismiss for a lack of subject matter jurisdiction. The district court granted the request to provide additional briefing on the issue. The court entered an order denying the motion to dismiss and granting an eviction.

[¶5]   Poitra's primary contention is that the district court erred in determining TIHA is not a dependent Indian community subject to tribal court jurisdiction, rather than state court jurisdiction. In denying Poitra's motion to dismiss, the district court conducted a four-factor analysis under *United States v. South Dakota,* 665 F.2d 837 (8th Cir. 1981), as well as a two-factor analysis under

1

*Alaska v. Native Village of Venetie Tribal Government*, 522 U.S. 520 (1998), and concluded TIHA does not constitute a dependent Indian community and is not Indian country. Poitra raised a second issue related to a contract provision between Turtle Mountain and TIHA. The court did not analyze the contract provision after finding the determinative issue to be whether or not TIHA was a dependent Indian community.

## II

[¶6]   Poitra argues that the district court erred in determining TIHA is not a dependent Indian community constituting "Indian country," and a contract provision requires the case be heard in Turtle Mountain tribal court. Both issues are asserted by Poitra as challenges to the state court's subject matter jurisdiction. Our standard of review is as follows:

> Subject-matter jurisdiction cannot be conferred by agreement, consent, or waiver, and issues involving subject-matter jurisdiction can be raised by the court or a party at any time in a proceeding. When the jurisdictional facts are not in dispute, we review the district court's decision on subject-matter jurisdiction de novo. If the underlying jurisdictional facts are disputed, this Court is presented with a mixed question of law and fact, and we review the question of law de novo and the district court's findings of fact under the clearly erroneous standard of review. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, upon review of the entire record, this Court believes a mistake has been made.

*Gustafson v. Poitra*, 2018 ND 202, ¶ 6, 916 N.W.2d 804 (quoting *Fredericks v. Fredericks*, 2016 ND 234, ¶ 6, 888 N.W.2d 177).

[¶7]   Poitra contends the jurisdictional facts are not in dispute and the question of subject matter jurisdiction should be reviewed de novo. TIHA argues that Poitra's argument places facts in dispute, and a mixed standard of review should be utilized. Poitra's challenge to the district court's subject matter jurisdiction in this case gives rise to factual disputes requiring a mixed standard of review, including the exact status of the land at issue. For example, Poitra argues the TIHA land was set aside by the federal government while

TIHA argues it was not set aside by the federal government. Because the underlying jurisdictional facts are disputed, we utilize a mixed standard of review to resolve the issues on appeal.

## III

[¶8]   Poitra's assertion the state court lacks subject matter jurisdiction is dependent upon a determination of whether the land is Indian country subject to tribal court jurisdiction. Section 1151, 18 U.S.C., defines "Indian country." "The definition of Indian country is found in the federal criminal code. [ ] Nonetheless, this definition 'applies in the civil context as well.'" *Lavallie v. Jay*, 2021 ND 140, ¶ 15, 963 N.W.2d 287 (internal citation omitted). Section 1151, 18 U.S.C., provides:

> Except as otherwise provided in sections 1154 and 1156 of this title, the term "Indian country", as used in this chapter, means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.

[¶9]   "Unless federal law directs otherwise, '[a] state ordinarily may not regulate the property or conduct of tribes or tribal-member Indians in Indian country.'" *Lavallie*, 2021 ND 140, ¶ 13 (quoting F. Cohen, *Handbook of Federal Indian Law* § 6.03[1][a], at 511 (2012)). The parties agree that TIHA is not a reservation or allotment. The parties also agree that the land is not held in trust by the federal government. The dispositive issue is whether the district court erred in determining TIHA is not a "dependent Indian community" under 18 U.S.C. § 1151(b).

[¶10] Both parties rely on the cases of *Narragansett Indian Tribe of Rhode Island v. Narragansett Electric Company*, 89 F.3d 908 (1st Cir. 1996), *United States v. South Dakota*, 665 F.2d 837 (8th Cir. 1981), and *Alaska v. Native*

3

*Village of Venetie Tribal Government*, 522 U.S. 520 (1998) in their arguments of whether TIHA is a dependent Indian community and therefore "Indian country." In *Alaska*, the United States Supreme Court articulated a two-part review to determine what constitutes a dependent Indian community:

> We now hold that [dependent Indian community] refers to a limited category of Indian lands that are neither reservations nor allotments, and that satisfy two requirements—first, they must have been set aside by the Federal Government for the use of the Indians as Indian land; second, they must be under federal superintendence.

522 U.S. at 527. We understand *Alaska* to be binding precedent, and we accordingly apply the *Alaska* two-part test to resolve the issues presented here. This Court previously considered the land around Trenton, North Dakota. *See State v. Gohl*, 477 N.W.2d 205 (N.D. 1991). In *Gohl*, this Court noted the following:

> As the area around Trenton is not within the confines of an Indian reservation, this issue seems to be whether or not the area could be deemed a "dependent Indian community," or, whether or not the land in the area and where the gaming establishment is situated is "allotted land." As Attorney General Nicholas Spaeth noted in a letter, dated February 15, 1990, to the Williams County State's Attorney, both questions are essentially factual in nature. The record before us discloses few facts relevant to resolving this matter.

*Id*. at 208. In *Gohl* we concluded "the record in its present state does not contain facts from which we could determine whether or not the theft occurred in 'Indian country.'" *Id*.

[¶11] The parties provided analysis of factors such as how federally dependent the Indian population is, the relationship of the community to the tribe and the federal government, and the nature of the area in question. The TIHA Director testified at the eviction hearing and provided testimony on the federal funding practices, status of the land, Tribal Ordinance 30 (the ordinance at issue), and whether the tribal court would have jurisdiction.

[¶12] When a challenge to subject matter jurisdiction is raised, we have held the moving party has the burden. *Lavallie v. Jay*, 2020 ND 147, ¶ 6, 945 N.W.2d 288. Our decision in *Lavallie* was in the context of whether the accident at issue occurred within "Indian Country." *Id*. In *Lavallie* we concluded as follows:

> Who bears the burden of proving a court's subject matter jurisdiction is a question this Court has not previously answered. North Dakota district courts are courts of general jurisdiction. *See* N.D. Const. art. VI, § 8; N.D.C.C. § 27-05-06; *In re Estate of Brandt*, 2019 ND 87, ¶ 20, 924 N.W.2d 762. State courts of general jurisdiction enjoy a presumption of jurisdiction, and the party challenging subject matter jurisdiction bears the burden of proving the court lacks jurisdiction. *See Nowlin v. United States*, 81 F.Supp.3d 514, 523 (N.D. Miss. 2015); *Calvagno v. Bisbal*, 430 F.Supp.2d 95, 99 (E.D.N.Y. 2006); *Alpine Vill. Co. v. City of McCall*, 154 Idaho 930, 303 P.3d 617, 623 (2013); *Gruszeczka v. Ill. Workers' Comp. Comm'n*, 372 Ill. Dec. 833, 992 N.E.2d 1234, 1238 (2013); *GKN Co. v. Magness*, 744 N.E.2d 397, 403-04 (Ind. 2001); *Credit Acceptance Corp. v. Prevo*, 277 So. 3d 847, 851 (La. Ct. App. 2019); *In re John F.*, 169 Md.App. 171, 899 A.2d 976, 981 (2006); *McGrath v. VRA I Ltd. P'ship*, 244 S.W.3d 220, 224 (Mo. Ct. App. 2008); *Quinlan v. Five-Town Health All., Inc.*, 207 Vt. 503, 192 A.3d 390, 398 (2018); 13 Charles Alan Wright et al., Federal Practice & Procedure § 3522 (3d ed. 2008).

*Lavallie*, at ¶ 6.

[¶13] Recognition as a dependent Indian community requires the land be set-aside by the federal government. *Alaska*, 522 U.S. 520, 527 ("[F]irst, [the land] must have been set aside by the Federal Government for the use of the Indians as Indian land[.]"). Further, section B beginning on page 532 in *Alaska*, the United States Supreme Court, in its consideration of the set-aside requirement, concluded as follows:

> [T]hat ANCSA transferred reservation lands to private, state-chartered Native corporations, without any restraints on alienation or significant use restrictions, and with the goal of avoiding "any permanent racially defined institutions, rights, privileges, or obligations." [ ] By ANCSA's very design, Native

corporations can immediately convey former reservation lands to non-Natives, and such corporations are not restricted to using those lands for Indian purposes. Because Congress contemplated that non-Natives could own the former Venetie Reservation, and because the Tribe is free to use it for non-Indian purposes, we must conclude that the federal set-aside requirement is not met. *Cf. United States v. McGowan*, 302 U.S., at 538, 58 S.Ct., at 287 (noting that the land constituting the Reno Indian Colony was held in trust by the Federal Government for the benefit of the Indians); *see also United States v. Pelican*, 232 U.S., at 447, 34 S.Ct., at 398 (noting federal restraints on the alienation of the allotments in question).

*Id.* at 532-33.

[¶14] The Tenth Circuit noted the following with regard to the set-aside requirement:

What does it mean for the federal government to set aside land for Indian use and to superintend it? The Court noted that the set-aside requirement means that there must be "some explicit action by Congress (or the Executive, acting under delegated authority) . . . to create or to recognize" the "land in question" as part of a federally recognized and dependent Indian community. [*Alaska*] 522 U.S. at 531 n. 6, 118 S.Ct. 948. Through an Act of Congress or some equally explicit executive action, then, the federal government must identify the land as *"set apart for the use of the Indians as such." Id.* at 529, 118 S.Ct. 948 (internal quotation marks omitted) (emphasis in original). So, for example, land simply conveyed by Congress to individual Indians or tribes that they are then "free to use . . . for non-Indian purposes" or sell as they wish does not qualify. *Id.* at 533, 118 S.Ct. 948. While groups of Indians may very well live on such lands in socially and politically discrete communities, they do not live in "Indian country" because the land in question has not been explicitly set aside by Congress for use as a "dependent Indian community." The superintendence requirement means that the federal government currently must be "actively controll[ing] the lands in question, effectively acting as a guardian for the Indians." *Id.* This requirement, too, necessarily excludes lands that the government has conveyed without restriction to Indians or others because such

6

lands do not implicate any sense of "guardian [ship]," "wardship[,] or trusteeship." *Id*. (internal quotation marks omitted).

*Hydro Resources, Inc. v. U.S. E.P.A.*, 608 F.3d 1131, 1148-49 (10th Cir. 2010).

[¶15] The Second Circuit has also discussed the set-aside by the Federal Government requirement. *Citizens Against Casino Gambling in Erie Cty. v. Chaudhuri*, 802 F.3d 267, 282 (2nd Cir. 2015). Citing the Tenth Circuit, the Second Circuit noted the following:

> We agree with the Tenth Circuit that "[s]imply put, *Venetie* held that Congress—not the courts, not the states, not the Indian tribes—gets to say what land is Indian country subject to federal jurisdiction." *Hydro Res., Inc. v. E.P.A.*, 608 F.3d 1131, 1151 (10th Cir. 2010) (en banc). In determining whether Congress has designated land as a "dependent Indian community," we consider whether the land bears the dual marks of federal set-aside and federal superintendence. The set-aside requirement ensures that the federal government designated the land to serve the interests of an "Indian community"—the tribe qua tribe—while the superintendence requirement ensures that the tribe is "dependent" on the federal government in the sense of being subject to federal control.

*Chaudhuri*, 802 F.3d at 282.

[¶16] Poitra had the burden in her challenge to the district court's subject matter jurisdiction. Poitra did not provide evidence of any explicit action by Congress (or the Executive branch, acting under delegated authority) to create or to recognize the land in question as part of a federally recognized and dependent Indian community. Applying the two-part *Alaska* test, the court found the property was not part of a dependent Indian community. Poitra has not presented evidence of how, or if, the TIHA land was set-aside by the federal government for the use of the Indians. Given the lack of evidence to establish the land had been set aside by the federal government, the district court's finding was not induced by an erroneous view of the law, there is evidence in the record to support the finding, and, after a review of the entire record, we are not left with a definite and firm conviction that a mistake has been made.

The court's finding the land was not located within a dependent Indian community was not clearly erroneous and we affirm the court's finding.

IV

[¶17] Poitra contends that the "contractual agreement" between TIHA and Turtle Mountain provides that TIHA is required by the United States Department of Housing and Urban Development [HUD] to include a provision providing that "Tribal Courts shall have jurisdiction to hear and determine actions for eviction." Poitra further argues that Tribal Ordinance 30, the Tribal ordinance that established TIHA, requires TIHA bring eviction actions in the tribal court. Tribal Ordinance 30 provides, in relevant part, as follows:

> e. The Tribe Government hereby declares that the powers of the Tribal Government shall be vigorously utilized to enforce eviction of a tenant or homebuyer for nonpayment or other contract violations including action through the appropriate courts.

> f. The Tribal Courts where appropriate and legal shall have jurisdiction to hear and determine an action for eviction of a tenant or homebuyer. The Tribal Government hereby declares that the powers of the Tribal courts shall be vigorously utilized to enforce eviction of a tenant or homebuyer for nonpayment or other contract violations.

[¶18] The district court provided the following analysis of Ordinance 30: "Ordinance 30 discusses enforcing evictions through appropriate courts." The court concluded that no contractual provisions or long-arm statutes required tribal court jurisdiction.

[¶19] Poitra has not argued a contractual agreement in the context of a choice of laws, but challenges the subject matter jurisdiction of the North Dakota district court by asserting Tribal Court jurisdiction is mandated by the contractual provision. However, as noted in *Gustafson*, 2018 ND 202, ¶ 6, "[s]ubject-matter jurisdiction cannot be conferred by agreement, consent, or waiver[.]" (quoting *Fredericks*, 2016 ND 234, ¶ 6.) Having concluded the district court did not clearly err in determining TIHA is not a dependent Indian community under the two-part test articulated in *Alaska*, we also conclude a

8

contractual provision, in itself, cannot establish subject matter jurisdiction with the tribal court.

## V

[¶20] Poitra's challenge to the district court's jurisdiction in her briefing to this Court references jurisdiction without specifying whether her challenge included a challenge to personal jurisdiction. At oral argument, Poitra could not identify how personal jurisdiction was deficient, but asserted both personal and subject matter jurisdiction were at issue. Her briefing on appeal does not offer any guidance to how she believes personal jurisdiction may have been deficient or offer any argument to support a challenge to personal jurisdiction. A party abandons an argument by failing to raise it in the party's appellate brief. *Bearce v. Yellowstone Energy Dev., LLC*, 2019 ND 89, ¶ 29, 924 N.W.2d 791. To the extent Poitra contends the court lacked personal jurisdiction, we deem her argument to have been abandoned.

## VI

[¶21] The district court's finding that TIHA is not a dependent Indian community was not clearly erroneous, the court did not err in determining it had subject matter jurisdiction, and the court did not err in finding TIHA did not have a contractual obligation to bring the eviction action in the tribal court. We affirm.

[¶22] Jon J. Jensen, C.J.
  Gerald W. VandeWalle
  Daniel J. Crothers
  Lisa Fair McEvers
  Jerod E. Tufte