McEvers, Justice.
 

 [¶ 1] Raymond and Linus Poitra appeal from a judgment quieting title in two parcels of land on the Turtle Mountain Indian Reservation in Darrel Gustafson and ordering the Poitras to pay Gustafson $67,567.98 in damages and $6,620 in attorney's fees. The Poitras argue the district court erred in deciding the Turtle Mountain Tribal Court did not have jurisdiction over Gustafson's action. We affirm.
 

 I
 

 [¶ 2] In 2015, Gustafson sued the Poitras and all others claiming an interest in two parcels of land, alleging Gustafson was a non-Indian fee owner of the two parcels located in Rolette County within the exterior boundaries of the Turtle Mountain Indian Reservation by virtue of a 2007 foreclosure judgment and a 2008 sheriff's deed.
 
 See
 

 Gustafson v. Poitra
 
 ,
 
 2008 ND 159
 
 , ¶¶ 1, 26,
 
 755 N.W.2d 479
 
 (affirming foreclosure judgment). Gustafson alleged the Poitras asserted certain interests in the parcels by filing with the Rolette County Register of Deeds a lessor's lien on the property for claimed rent of $337,008 and royalties and penalties of $6,410,150 and by notifying Gustafson's bank about the lien. Gustafson sought to quiet title to the two parcels and to recover damages attributable to the lessor's lien.
 

 [¶ 3] The Poitras answered, alleging the state district court did not have subject matter jurisdiction over Gustafson's action against them for the lease of Indian-owned land located within the boundaries of the Turtle Mountain Indian Reservation. They alleged the Turtle Mountain Tribal Court had jurisdiction over issues about Gustafson's consensual lease relationship with the Poitras under
 
 Montana v. United States
 
 ,
 
 450 U.S. 544
 
 ,
 
 101 S.Ct. 1245
 
 ,
 
 67 L.Ed.2d 493
 
 (1981) and under the Turtle Mountain Tribal Code. The Poitras sought dismissal of Gustafson's action.
 

 [¶ 4] After a bench trial, the district court found Gustafson was a non-Indian owner of fee land in Rolette County within the Turtle Mountain Indian Reservation. The court ruled the exceptions in
 
 Montana
 
 providing a tribal court with jurisdiction over fee land transferred to a non-Indian did not provide the Turtle Mountain Tribal Court with jurisdiction over the fee land transferred to Gustafson in the foreclosure action. The district court ruled it had subject
 
 *806
 
 matter jurisdiction over Gustafson's action under the infringement test in
 
 Williams v. Lee
 
 ,
 
 358 U.S. 217
 
 ,
 
 79 S.Ct. 269
 
 ,
 
 3 L.Ed.2d 251
 
 (1959). The court decided the Poitras' claimed lessor's lien was a void nonconsensual common-law lien under N.D.C.C. ch. 35-35. The court quieted title in the two parcels in Gustafson and awarded him a money judgment against the Poitras in the amount of $67,567.98 and attorney's fees in the amount of $6,620.
 

 II
 

 [¶ 5] The Poitras argue the district court erred in deciding the Turtle Mountain Tribal Court did not have subject matter jurisdiction over Gustafson's action under
 
 Montana
 
 . They argue the Turtle Mountain Tribal Court has jurisdiction under
 
 Montana
 
 , because Gustafson engaged in consensual actions in doing business from the subject property on the reservation and because the Turtle Mountain Band of Chippewa Indians established the action affected the political integrity, economic security, or health and welfare of the tribe.
 

 [¶ 6] In
 
 Fredericks v. Fredericks
 
 ,
 
 2016 ND 234
 
 , ¶ 6,
 
 888 N.W.2d 177
 
 (citations omitted), we described standards for analyzing subject matter jurisdiction:
 

 Subject-matter jurisdiction cannot be conferred by agreement, consent, or waiver, and issues involving subject-matter jurisdiction can be raised by the court or a party at any time in a proceeding. When the jurisdictional facts are not in dispute, we review the district court's decision on subject-matter jurisdiction de novo. If the underlying jurisdictional facts are disputed, this Court is presented with a mixed question of law and fact, and we review the question of law de novo and the district court's findings of fact under the clearly erroneous standard of review. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, upon review of the entire record, this Court believes a mistake has been made.
 

 [¶ 7] Here, the district court found Gustafson was a non-Indian owner of the two parcels of fee land. The court found that Gustafson received a sheriff's deed for the property by virtue of the prior foreclosure action and that the Poitras no longer had an interest in the land. The court consequently analyzed subject matter jurisdiction over the non-Indian owned fee land within the reservation under
 
 Montana
 
 .
 

 [¶ 8] The Poitras nevertheless assert their self-represented attempt to raise a jurisdictional issue in the prior state court foreclosure action was summarily dismissed or denied, and they claim the state court lacked subject matter jurisdiction in the prior foreclosure action.
 

 [¶ 9] Subject matter jurisdiction is a court's power to hear and decide the general subject involved in the action.
 
 Albrecht v. Metro Area Ambulance
 
 ,
 
 1998 ND 132
 
 , ¶ 10,
 
 580 N.W.2d 583
 
 . To the extent the Poitras claim the state court lacked subject matter jurisdiction in the prior foreclosure action, our decision in that case states the issue was raised and decided adversely to the Poitras in the district court and was not raised in the appeal to this Court.
 
 Gustafson
 
 ,
 
 2008 ND 159
 
 , ¶¶ 2, 26 n.1,
 
 755 N.W.2d 479
 
 . Although subject matter jurisdiction can be raised at any time in a proceeding, the United States Supreme Court has held that an express determination on subject matter jurisdiction in a prior action can be given res judicata effect.
 
 See
 

 Chicot Cty. Drainage Dist. v. Baxter State Bank
 
 ,
 
 308 U.S. 371
 
 , 376-77,
 
 60 S.Ct. 317
 
 ,
 
 84 L.Ed. 329
 
 (1940) ;
 
 Davis v. Davis
 
 ,
 
 305 U.S. 32
 
 , 40-41,
 
 59 S.Ct. 3
 
 ,
 
 83 L.Ed. 26
 
 (1938) ;
 

 *807
 

 Stoll v. Gottlieb
 
 ,
 
 305 U.S. 165
 
 , 171-72,
 
 59 S.Ct. 134
 
 ,
 
 83 L.Ed. 104
 
 (1938) ;
 
 Am. Sur. Co. v. Baldwin
 
 ,
 
 287 U.S. 156
 
 , 166,
 
 53 S.Ct. 98
 
 ,
 
 77 L.Ed. 231
 
 (1932).
 
 See generally Note,
 

 Judgment on Merits as Res Judicata of Jurisdiction Over Subject Matter
 
 ,
 
 49 Yale L.J. 959
 
 , 960 (1940) (stating express finding of jurisdiction, like any other judicial act, should be given effect of res judicata). This Court has also recognized and applied the rule that subject matter jurisdiction can be given res judicata effect.
 
 See
 

 In re Edinger's Estate
 
 ,
 
 136 N.W.2d 114
 
 , 121-22 (N.D. 1965) ;
 
 Schillerstrom v. Schillerstrom
 
 ,
 
 75 N.D. 667
 
 , 697-700,
 
 32 N.W.2d 106
 
 , 121-24 (1948).
 

 [¶ 10] We have repeatedly said self-represented litigants are bound by the same procedural rules as represented litigants, and the Poitras' self-represented status in the prior foreclosure action does not relieve them of the requirements or consequences of complying with procedural rules for raising issues.
 
 See, e.g.
 
 ,
 
 State v. Taylor
 
 ,
 
 2018 ND 132
 
 , ¶ 13,
 
 911 N.W.2d 905
 
 . Here, the district court's findings about Gustafson's ownership of the two parcels of fee land when this action was commenced comport with the foregoing principles of res judicata and are supported by evidence in the record. Under Turtle Mountain Tribal law and North Dakota law, the state court foreclosure judgment is entitled to full faith and credit.
 
 See
 
 N.D.R.Ct. 7.2 and Turtle Mountain Band of Chippewa Indians of North Dakota Tribal Code ch. 4.0103 (2006). Gustafson was a non-Indian owner of the two parcels of fee land within the reservation under the foreclosure judgment and the court's findings in this action, and we consider the jurisdictional issue in this case under what are now commonly referred to as the
 
 Montana
 
 exceptions authorizing tribal court jurisdiction over non-Indian activity on non-Indian fee land on a reservation.
 

 [¶ 11] In
 
 Plains Commerce Bank v. Long Family Land & Cattle Co., Inc.
 
 ,
 
 554 U.S. 316
 
 , 320, 327-30,
 
 128 S.Ct. 2709
 
 ,
 
 171 L.Ed.2d 457
 
 (2008) (citations omitted and emphasis in original), in the context of holding a tribal court did not have jurisdiction to adjudicate a discrimination claim against a non-Indian bank concerning the non-Indian bank's sale of its fee land, the United States Supreme Court aptly described the underlying principles and framework for assessing tribal court jurisdiction under the
 
 Montana
 
 exceptions:
 

 For nearly two centuries now, we have recognized Indian tribes as "distinct, independent political communities," qualified to exercise many of the powers and prerogatives of self-government. We have frequently noted, however, that the "sovereignty that the Indian tribes retain is of a unique and limited character." It centers on the land held by the tribe and on tribal members within the reservation.
 

 As part of their residual sovereignty, tribes retain power to legislate and to tax activities on the reservation, including certain activities by nonmembers, to determine tribal membership, and to regulate domestic relations among members. They may also exclude outsiders from entering tribal land. But tribes do not, as a general matter, possess authority over non-Indians who come within their borders: "[T]he inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe." As we [have] explained, the tribes have, by virtue of their incorporation into the American republic, lost "the right of governing ... person[s] within their limits except themselves."
 

 This general rule restricts tribal authority over nonmember activities taking place on the reservation, and is particularly strong when the nonmember's activity occurs on land owned in fee simple by non-Indians-what we have called
 
 *808
 
 "non-Indian fee land." Thanks to the Indian General Allotment Act of 1887, there are millions of acres of non-Indian fee land located within the contiguous borders of Indian tribes. The history of the General Allotment Act and its successor statutes has been well rehearsed in our precedents. Suffice it to say here that the effect of the Act was to convert millions of acres of formerly tribal land into fee simple parcels, "fully alienable," and "free of all charge or incumbrance whatsoever."
 

 Our cases have made clear that once tribal land is converted into fee simple, the tribe loses plenary jurisdiction over it. Among the powers lost is the authority to prevent the land's sale,-not surprisingly, as "free alienability" by the holder is a core attribute of the fee simple. Moreover, when the tribe or tribal members convey a parcel of fee land "
 
 to non-Indians
 
 , [the tribe] loses any former right of absolute and exclusive use and occupation of the conveyed lands." This necessarily entails "the loss of regulatory jurisdiction over the use of the land by others." As a general rule, then, "the tribe has no authority itself, by way of tribal ordinance or actions in the tribal courts, to regulate the use of fee land."
 

 We have recognized two exceptions to this principle, circumstances in which tribes may exercise "civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands." First, "[a] tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." Second, a tribe may exercise "civil authority over the conduct of non-Indians on fee lands within the reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." These rules have become known as the
 
 Montana
 
 exceptions, after the case that elaborated them. By their terms, the exceptions concern regulation of "the
 
 activities
 
 of nonmembers" or "the
 
 conduct
 
 of non-Indians on fee land."
 

 Given Montana's " 'general proposition that the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe,' " efforts by a tribe to regulate nonmembers, especially on non-Indian fee land, are "presumptively invalid[.]" The burden rests on the tribe to establish one of the exceptions to
 
 Montana's
 
 general rule that would allow an extension of tribal authority to regulate nonmembers on non-Indian fee land. These exceptions are "limited" ones, and cannot be construed in a manner that would "swallow the rule," or "severely shrink" it.
 

 [¶ 12] In
 
 Montana
 
 ,
 
 450 U.S. at 547
 
 ,
 
 101 S.Ct. 1245
 
 , a dispute arose over the ownership of the bed of the Big Horn River on the Crow Tribe of Montana Reservation and over the Crow Tribe's authority to regulate hunting and fishing by non-Indians on lands within its reservation owned in fee simple by non-Indians. The United States, proceeding in its own right and as a fiduciary for the Tribe, brought an action against the State of Montana, seeking: (1) a declaratory judgment quieting title to the bed of the Big Horn River in the United States as trustee for the Tribe; (2) a declaratory judgment establishing that the Tribe and the United States had sole authority to regulate hunting and fishing within the reservation; and (3) an injunction requiring the State of Montana to get Tribe permission before issuing hunting or fishing licenses for use within the reservation.
 

 Id.
 

 at 549
 
 ,
 
 101 S.Ct. 1245
 
 .
 

 *809
 
 [¶ 13] The United States Supreme Court concluded that the United States initially held title to the bed of the Big Horn River in trust for future states and that title passed to the State of Montana upon its admission to the Union.
 
 Montana
 
 ,
 
 450 U.S. at 550-57
 
 ,
 
 101 S.Ct. 1245
 
 . After determining the Crow Tribe did not have an ownership interest in the riverbed, the Supreme Court applied what are now known as the two
 
 Montana
 
 exceptions for tribal court jurisdiction and held that neither of those exceptions authorized the Crow Tribe to regulate non-Indian hunting and fishing on land within the reservation owned in fee by nonmembers of the Tribe.
 

 Id.
 

 at 565-67
 
 ,
 
 101 S.Ct. 1245
 
 .
 

 [¶ 14] In
 
 Fredericks
 
 ,
 
 2016 ND 234
 
 , ¶¶ 8-11,
 
 888 N.W.2d 177
 
 , this Court considered a reformation and quiet title action under the two
 
 Montana
 
 exceptions and the Supreme Court's decision in
 
 Plains Commerce Bank
 
 ,
 
 554 U.S. 316
 
 ,
 
 128 S.Ct. 2709
 
 . In
 
 Fredericks
 
 , we said that when a tribe or tribal members convey a parcel of fee land to non-Indians, the tribe loses any former right of absolute and exclusive use and occupation of the conveyed lands, and as a general rule, the tribe has no authority itself, by way of tribal ordinance or action in tribal courts, to regulate the use of fee land unless one of the two
 
 Montana
 
 exceptions authorizes tribal court jurisdiction.
 
 Fredericks,
 
 at ¶ 9.
 

 [¶ 15] The Supreme Court's decision in
 
 Montana
 
 ,
 
 450 U.S. at 549
 
 ,
 
 101 S.Ct. 1245
 
 and this Court's decision in
 
 Fredericks
 
 ,
 
 2016 ND 234
 
 , ¶ 1,
 
 888 N.W.2d 177
 
 , both involved quiet title actions. Here, Gustafson's lawsuit is an action by a non-Indian owner of fee land located within the boundaries of the Turtle Mountain Indian Reservation to quiet title to the fee land and for damages, and the parties do not dispute that the
 
 Montana
 
 exceptions provide the framework for deciding the jurisdictional issue.
 

 [¶ 16] The district court analyzed Gustafson's action under the
 
 Montana
 
 exceptions authorizing tribal court jurisdiction over non-Indian fee land within the boundaries of an Indian reservation in limited circumstances:
 

 [T]his action is not a breach of a contract action, but centers on whether Poitra perfected a lien on fee land. Poitra filed a lien on this fee land owned by Gustafson, who in turn filed this quiet title action. This quiet title action is not regulation of a non-member's activity, but arises out of a tribal member's activity off of the reservation; namely Poitra's filing a "lessor's lien" against this fee land in the Rolette County Recorder's Office. Thus, the first exception from
 
 Montana
 
 does not apply to this matter.
 

 The second exception from
 
 Montana
 
 ... has been narrowed to conduct that must "imperil the subsistence" of the tribal community and that "tribal power must be necessary to avert catastrophic consequences."
 
 Fredericks
 
 , ¶ 9 (citing
 
 Plains Commerce
 
 , at 341 [
 
 128 S.Ct. 2709
 
 ] ). The quiet title action in the current case for the fee land at issue simply doesn't rise to these heightened requisites. Should this Court quiet title to this land in Gustafson, such action would not imperil the subsistence of the Turtle Mountain Tribal Community, nor would the reservation of the tribal power be necessary to avert catastrophic consequences.
 

 Id.
 

 While the loss of this formerly Indian-owned fee land to a third party non-Indian is quite possibly disappointing to the Turtle Mountain Tribe, it cannot be called catastrophic for tribal self-governance.
 
 Id.
 
 at ¶ 10.
 

 [¶ 17] We agree with the district court's analysis. This is not an action by the Poitras
 
 *810
 
 to collect on a claimed breach of a lease of their land to Gustafson.
 
 See
 

 Gustafson v. Estate of Poitra
 
 ,
 
 2011 ND 150
 
 , ¶¶ 3-5, 8, 14-15,
 
 800 N.W.2d 842
 
 (vacating state court judgment involving interpretation of lease for Indian-owned fee land within the exterior boundaries of Turtle Mountain Indian Reservation where non-Indian lessee brought action against Indian lessors in state court). Rather, this is a quiet title action by Gustafson, a non-Indian owner of fee land within the reservation, to clear his record title to the land and to recover damages for the Poitras' conduct in filing a lessor's lien with the Rolette County Register of Deeds and notifying Gustafson's bank about the lessor's lien. At the time this action was brought, Gustafson, a non-Indian, was the record title owner of the fee land.
 
 See
 

 Plains Commerce Bank
 
 ,
 
 554 U.S. at 339
 
 ,
 
 128 S.Ct. 2709
 
 ;
 
 Fredericks
 
 ,
 
 2016 ND 234
 
 , ¶ 7,
 
 888 N.W.2d 177
 
 . The fee land at issue in this case had previously passed to Gustafson in the foreclosure action, and at that point, passed outside the immediate control of the Tribe and the Poitras. Gustafson's quiet title action works no additional intrusion on tribal relations or self-government and does not imperil the subsistence of the Tribe or the tribal community and cannot fairly be called catastrophic for tribal self-government.
 
 See
 

 Fredericks
 
 , at ¶ 11. We conclude the district court did not err in deciding the tribal court does not have jurisdiction over Gustafson's action to quiet title and to recover damages under the
 
 Montana
 
 exceptions.
 

 [¶ 18] The district court also decided it had subject matter jurisdiction over the action under the infringement test from
 
 Lee
 
 ,
 
 358 U.S. 217
 
 ,
 
 79 S.Ct. 269
 
 . In
 
 Lee
 
 , at 223,
 
 79 S.Ct. 269
 
 , the United States Supreme Court held a state court may not exercise jurisdiction over matters arising on an Indian reservation if the exercise of state jurisdiction would undermine the authority of the tribal courts over reservation affairs and infringe on the right of Indians to govern themselves.
 

 [¶ 19] The Poitras have not directly challenged the district court's determination under the infringement test as an issue in their appeal. To the extent that the Poitras raised jurisdiction generally, the lack of tribal jurisdiction is a factor to be considered in determining whether state court jurisdiction exists.
 
 Fredericks
 
 ,
 
 2016 ND 234
 
 , ¶ 13,
 
 888 N.W.2d 177
 
 . We agree with the district court's conclusion that for many of the same reasons the
 
 Montana
 
 exceptions do not apply, this action does not infringe on the Tribe's right to make its own laws and be ruled by them.
 
 See
 

 id.
 
 at ¶ 12. We, therefore, conclude the district court had subject matter jurisdiction to hear Gustafson's action.
 

 III
 

 [¶ 20] We affirm the judgment.
 

 [¶ 21] Lisa Fair McEvers
 

 Jon J. Jensen
 

 Jerod E. Tufte
 

 Daniel J. Crothers
 

 Gerald W. VandeWalle, C.J.