# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2020 ND 9

Darrel Gustafson,                                                      Plaintiff and Appellee

   v.

Linus Poitra, Raymond Poitra,                          Defendants and Appellants

      and

any and all others in possession of the

Property described in the Complaint,                                    Defendants

### No. 20190230

Appeal from the District Court of Rolette County, Northeast Judicial District, the Honorable Anthony Swain Benson, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

David J. Smith and Tyler J. Malm, Bismarck, ND, for plaintiff and appellee; (on brief).

William J. Delmore, Bismarck, ND, for defendants and appellants Linus Poitra and Raymond Poitra; (on brief).

**Crothers, Justice.**

[¶1] Linus and Raymond Poitra appeal the district court judgment of eviction. The Poitras argue the district court erred by exercising jurisdiction over this matter, and by sending a North Dakota law enforcement officer onto the reservation to evict tribal members from property within the Turtle Mountain Reservation. We affirm.

I

[¶2] The parties have been before this Court multiple times. First, was a foreclosure action on two parcels of property. *Gustafson v. Poitra*, 2008 ND 159, 755 N.W.2d 479. Tribal jurisdiction was raised at the district court, but not on appeal. *Id*. n.1. This Court affirmed the district court and concluded Raymond Poitra waived his statute of limitations defense, he failed to raise a material fact that his prior bankruptcy proceedings released the mortgage on his real property, he received due process when the district court granted Gustafson summary judgment, and the court did not abuse its discretion in denying the post-judgment motion. *Id*. at ¶ 1.

[¶3] In the second case, Gustafson sued in district court claiming Leon Poitra's estate owed him money for maintenance and repairs he made on a building located in part on his land and in part on Leon Poitra's land. *Gustafson v. Estate of Poitra*, 2011 ND 150, ¶ 2, 800 N.W.2d 842. The 2011 case centered on a 1997 lease between Gustafson and Leon and Linus Poitra. This Court vacated the default judgment in favor of Gustafson because the district court did not have subject matter jurisdiction over the lease. *Id*. at ¶¶ 1, 14.

[¶4] The third case was *Gustafson v. Poitra*, 2018 ND 202, 916 N.W.2d 804. In that case, Gustafson sued Raymond and Linus Poitra alleging he was a non-Indian fee owner of two parcels located in Rolette County within the exterior boundaries of the Turtle Mountain Reservation. *Id*. at ¶ 2. Gustafson claimed ownership by virtue of a 2007 foreclosure judgment and a 2008 sheriff's deed

after the Poitras placed a lessor's lien on the properties. *Id*. The district court quieted title in the two parcels of land to Gustafson and ordered the Poitras pay damages. The Poitras argued the district court erred in deciding the Turtle Mountain tribal court did not have jurisdiction over the action. *Id*. at ¶ 1. This Court affirmed, and concluded neither of the two *Montana* exceptions applied. *Id*. at ¶¶ 17, 19.

[¶5]   The current case began when Gustafson sued to evict the Poitras and require that they remove their personal property from property that was subject of the 2018 quiet title action. The district court determined it had subject matter jurisdiction and granted the eviction. The Poitras contend this action is a continuance of the prior foreclosure, and they are not challenging the foreclosure or the quiet title. They argue the eviction action should have been brought in tribal court, and sending a North Dakota law enforcement officer onto the reservation to evict tribal members is not a continuance of the prior foreclosure action, but is a clear violation of the United States Supreme Court holding in *Montana v. United States*, 450 U.S. 544 (1981).

II

[¶6]   "In *Fredericks v. Fredericks*, 2016 ND 234, ¶ 6, 888 N.W.2d 177 (citations omitted), we described standards for analyzing subject matter jurisdiction:

> 'Subject-matter jurisdiction cannot be conferred by agreement, consent, or waiver, and issues involving subject-matter jurisdiction can be raised by the court or a party at any time in a proceeding. When the jurisdictional facts are not in dispute, we review the district court's decision on subject-matter jurisdiction de novo. If the underlying jurisdictional facts are disputed, this Court is presented with a mixed question of law and fact, and we review the question of law de novo and the district court's findings of fact under the clearly erroneous standard of review. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, upon review of the entire record, this Court believes a mistake has been made.'"

*Poitra*, 2018 ND 202, ¶ 6, 916 N.W.2d 804.

[¶7]   Here, the dispute is whether the district court had jurisdiction to adjudicate an action for eviction regarding the property, which is non-Indian fee land located within the Turtle Mountain Reservation. The dispute is not factual. In the 2018 case we accepted that: 1) Gustafson is a non-Indian; 2) the property at issue is owned by Gustafson in fee; and 3) the property at issue is within the exterior boundaries of the Turtle Mountain Reservation. Therefore, the applicable standard of review is de novo. *Poitra*, 2018 ND 202, ¶ 4, 916 N.W.2d 804.

## III

[¶8]   The Poitras argue the district court did not have jurisdiction over an eviction regarding the non-Indian fee land located within the Turtle Mountain Reservation.

[¶9]   "Subject matter jurisdiction is a court's power to hear and decide the general subject involved in the action." *Poitra*, 2018 ND 202, ¶ 9, 916 N.W.2d 804 (citing *Albrecht v. Metro Area Ambulance*, 1998 ND 132, ¶ 10, 580 N.W.2d 583). In *Plains Commerce Bank v. Long Family Land & Cattle Co., Inc.*, 554 U.S. 316, 320, 327-30 (2008), a tribal court did not have jurisdiction to adjudicate a discrimination claim against a non-Indian bank concerning the non-Indian bank's sale of its fee land. In *Plains Commerce Bank*, the Supreme Court described the underlying principles and framework for assessing tribal court jurisdiction under the *Montana* exceptions:

> "For nearly two centuries now, we have recognized Indian tribes as 'distinct, independent political communities,' qualified to exercise many of the powers and prerogatives of self-government. We have frequently noted, however, that the 'sovereignty that the Indian tribes retain is of a unique and limited character.' It centers on the land held by the tribe and on tribal members within the reservation.
> "As part of their residual sovereignty, tribes retain power to legislate and to tax activities on the reservation, including certain activities by nonmembers, to determine tribal membership, and to regulate domestic relations among members. They may also exclude outsiders from entering tribal land. But tribes do not, as a

3

general matter, possess authority over non-Indians who come within their borders: '[T]he inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe.' As we [have] explained, the tribes have, by virtue of their incorporation into the American republic, lost 'the right of governing . . . person[s] within their limits except themselves.'

"This general rule restricts tribal authority over nonmember activities taking place on the reservation, and is particularly strong when the nonmember's activity occurs on land owned in fee simple by non-Indians—what we have called 'non-Indian fee land.' Thanks to the Indian General Allotment Act of 1887, there are millions of acres of non-Indian fee land located within the contiguous borders of Indian tribes. The history of the General Allotment Act and its successor statutes has been well rehearsed in our precedents. Suffice it to say here that the effect of the Act was to convert millions of acres of formerly tribal land into fee simple parcels, 'fully alienable,' and 'free of all charge or incumbrance whatsoever.'

"Our cases have made clear that once tribal land is converted into fee simple, the tribe loses plenary jurisdiction over it. Among the powers lost is the authority to prevent the land's sale,—not surprisingly, as 'free alienability' by the holder is a core attribute of the fee simple. Moreover, when the tribe or tribal members convey a parcel of fee land 'to *non-Indians*, [the tribe] loses any former right of absolute and exclusive use and occupation of the conveyed lands.' This necessarily entails 'the loss of regulatory jurisdiction over the use of the land by others.' As a general rule, then, 'the tribe has no authority itself, by way of tribal ordinance or actions in the tribal courts, to regulate the use of fee land.'

"We have recognized two exceptions to this principle, circumstances in which tribes may exercise 'civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands.' First, '[a] tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements.' Second, a tribe may exercise 'civil authority over the conduct of non-Indians on fee lands within the reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.' These rules have become known as the *Montana* exceptions, after the case that elaborated

them. By their terms, the exceptions concern regulation of 'the *activities* of nonmembers' or 'the *conduct* of non-Indians on fee land.'

"Given Montana's "'general proposition that the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe,'" efforts by a tribe to regulate nonmembers, especially on non-Indian fee land, are 'presumptively invalid[.]'"

*Poitra*, 2018 ND 202, ¶ 11, 916 N.W.2d 804. "The burden rests on the tribe to establish one of the exceptions to *Montana's* general rule that would allow an extension of tribal authority to regulate nonmembers on non-Indian fee land." *Plains Commerce Bank,* 554 U.S. at 330; *but cf. Schaghticoke Indian Tribe v. Rost*, 138 Conn. App. 204, 50 A.3d 411 (2012) (citing *State v. Velky,* 263 Conn. 602, 605 n.5, 821 A.2d 752 (2003) ("Our Supreme Court has indicated that tribal sovereignty may only be invoked by a member of the tribe.")). "These exceptions are 'limited' ones, and cannot be construed in a manner that would 'swallow the rule,' or 'severely shrink' it." *Poitra*, at ¶ 11.

[¶10] The Poitras broadly argue that eviction of tribal members from land within the Turtle Mountain Reservation by a state law enforcement officer violates the *Montana* exceptions. However, they make no discernable argument addressing the first exception permitting tribal regulation of certain consensual relationships.

[¶11] Regarding the second *Montana* exception, the Poitras argue "the utilization of a nonfederal law enforcement official from a foreign jurisdiction to enforce the eviction action certainly appears to challenge the political integrity and the health and welfare of the [t]ribe." They provide no legal support for the claim. Nor do they explain how the remedy selected by the court deprives the court of subject matter jurisdiction. *Christenson v. Grandy*, 46 N.D. 418, 180 N.W. 18, 22 (1920) ("Jurisdiction is the power to hear and determine a cause, and carries with it the power to decide a cause within the jurisdiction of the court incorrectly as well as correctly, and it does not relate to the rights of the parties, but to the power of the court.").

[¶12] The argument that sending State law enforcement to effectuate the eviction violated either *Montana* exception is inadequately supported. Therefore, the Poitras have not met their burden. We "will not consider an argument that is not adequately articulated, supported, and briefed." *Hale v. State*, 2012 ND 148, ¶ 12, 818 N.W.2d 684 (citing *Holden v. Holden*, 2007 ND 29, ¶ 7, 728 N.W.2d 312 (quoting *State v. Haibeck*, 2006 ND 100, ¶ 9, 714 N.W.2d 52)).

IV

[¶13] The Poitras did not meet their burden under either *Montana* exception and did not explain how a district court was divested of subject matter jurisdiction to grant a judgment of eviction. The district court judgment is affirmed.

[¶14]  Daniel J. Crothers
       Gerald W. VandeWalle
       Lisa Fair McEvers
       Jerod E. Tufte
       Jon J. Jensen, C.J.