*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BETH EVA SMITH and JOHN G. SMITH,

Plaintiffs-Appellants,

v

STEPHEN E. LANDRUM and MAUREEN E. LANDRUM,

Defendants-Appellees.

FOR PUBLICATION
October 29, 2020
9:20 a.m.

No. 347402
Baraga Circuit Court
LC No. 2017-006780-CH

Before: MURRAY, C.J., and CAVANAGH and CAMERON, JJ.

MURRAY, C.J.

The question presented in this quiet title action is whether a state court has subject-matter jurisdiction to decide an easement dispute in favor of a non-Indian on land owned by a non-Indian when the land is located on an Indian reservation. The trial court concluded that it did not, and therefore entered a final order granting defendants' motion for summary disposition under MCR 2.116(C)(4) (lack of subject-matter jurisdiction).[1] For the reasons outlined below, we hold that the trial court had subject-matter jurisdiction over the easement dispute. We therefore reverse the order granting defendant's motion for summary disposition, and remand for further proceedings.

## I. BACKGROUND

The material facts relating to the jurisdictional issue are undisputed. The land at issue is owned by defendant, who is not an Indian. Plaintiffs, who seek a prescriptive easement over a part of defendant's land, are also not Indians. The land, however, is located within the L'Anse Indian

---

[1] According to defendants' response, defendant Maureen Landrum is deceased. Use of the singular "defendant" will refer to defendant Stephen Landrum.

Reservation, but it is not held in trust for the tribe or any tribal member (or any Indian, for that matter).[2]

Although the land is not currently owned by an Indian, it was previously owned by Mark Perrault, who was a member of the Keweenaw Bay Indian Community. Specifically, the record shows that two "Deeds to Restricted Indian Land" were issued by the United States Department of the Interior, Bureau of Indian Affairs, conveying the property at issue to "The United States of America in trust for Mark H. Perrault, Chippewa Indian." The deeds state that "[t]his conveyance is made pursuant to the provisions of the Act of June 18, 1934 ([25 USC 461, *et seq.*, now 25 USC 5101], 48 Stat. 984.),"  and that they were recorded in the "Bureau of Indian Affairs Inherited Indian Land Deed Book."

After Perrault died, a Department of the Interior administrative law judge held a proceeding "to determine the heirs, to determine the validity of the Last Will and Testament, and to settle the estate" of Perrault, which included "trust or restricted property" located on the L'Anse Indian Reservation.[3] As a result of the hearing, the property passed to Perrault's wife, Noreen, with the order stating that Noreen's share "will pass to her in unrestricted or non-trust status by virtue of the fact that she is non-Indian, and her share shall become subject to the jurisdiction of the state where the land is located. *Estate of Dana A Knight*, 9 IBIA 82, 88 (1981); *Bailess v Paukune*, 344 US 171[; 73 S Ct 198; 97 L Ed 197] (1952); *Levindale Lead* [*& Zinc Mining Co*] *v Coleman*, 241 US 432[; 36 S Ct 644; 60 L Ed 1080] (1916)." Noreen subsequently conveyed the property to Perrault's son and three daughters, all of whom are Indians, by warranty deed dated January 23, 2002, and registered the deed with the Baraga County Register of Deeds. These four owners then conveyed the property to defendant (again, a non-Indian) by warranty deed dated August 3, 2012, and that deed was also registered with the county register of deeds.

After the complaint was filed and served, defendant moved for summary disposition under MCR 2.116(C)(4), arguing that the circuit court lacked subject-matter jurisdiction because defendant's property is located within the borders of the reservation, and a previous owner in the chain of title, Perrault, was a tribal member. Relying on the Keweenaw Bay Indian Community Tribal Code, §§ 1.102 and 1.103, defendant argued that a state court does not have subject-matter jurisdiction to impose a prescriptive easement over land located within the exterior boundaries of an Indian reservation, even when the land owner and parties are non-Indians. Defendant maintained that under 28 USC 1360,[4] the case must be adjudicated in federal court if the tribal court does not take jurisdiction.

---

[2] The Keweenaw Bay Indian Community's reservation is the L'Anse Indian Reservation, located in Baraga County.

[3] 25 USC 373 governs "disposal by will of allotments held under trust," and states that "no will so executed shall be valid or have any force or effect unless and until it shall have been approved by the Secretary of the Interior[.]" The statute also provides that the Secretary of the Interior may "cause patent in fee to be issued to the devisee or devisees[.]"

[4] As discussed later, 28 USC 1360 governs state jurisdiction in actions in which Indians are parties.

For their part, plaintiffs argued that the circuit court had subject-matter jurisdiction because the land is owned in fee simple by defendant, and is not held in trust by the United States government for an Indian person. Plaintiffs contended that defendant's argument rested on the erroneous assertion that defendant's land is held in federal trust for an Indian, when in fact the parcel was transferred out of trust through the September 14, 2001 order, and has never been transferred back into trust.

After holding a hearing on defendant's motion, the trial court subsequently issued a written opinion and order granting the motion. The trial court expressed concern for creating a " 'checkerboard' jurisdiction causing confusion, inconsistencies and potentially disruptive land use problems," and ultimately opined that because the land was located within the reservation, either that tribe's tribal court, or a federal district court, had jurisdiction over the dispute, and depending on where the case was refiled, that other court should decide whether it had jurisdiction:

> Indian tribes are sovereign nations with the inherent authority to regulate both their members and their territories. Our Michigan Court of Appeals, in the unpublished case of *State Treasurer v Duty*, [unpublished per curiam opinion of the Court of Appeals, issued January 12, 2016 (Docket No. 323854)], quoted the United States Supreme Court:
>
>> "Generally speaking, primary jurisdiction over land that is Indian country rests with the Federal Government, and the Indian tribe inhabiting it, and not with the States." *Alaska v Native Village of Venetie Tribal Gov't*, 522 US 520, 527 n 1; 118 S Ct 948; 140 L Ed 2d 30 (1998.)
>
> The Tribal Code of the Keweenaw Bay Indian Community conforms to the above set forth statement. Section 1.102 of the code states:
>
>> "The territorial jurisdiction of the Tribal Court shall encompass all areas within the exterior boundaries of the L'Anse Indian Reservation, Michigan, as well as all areas within the exterior boundaries of any other lands or waters which now or hereafter shall be held in Trust by the United States of America for the Keweenaw Bay Indian Community or any of its members.
>
>> "Further, and for the purpose of enforcement of approved tribal hunting, trapping, gathering, farming, and fishing regulations enacted to regulate treaty protected off-reservation hunting, trapping, gathering, farming, and fishing activities, such territorial jurisdiction shall extend to all areas where such treaty rights shall exist."
>
> It is to be noted that the Tribal Code says "all" areas within the exterior boundaries of the L'Anse Indian Reservation without limitation. All areas within the exterior boundaries of the L'Anse Indian Reservation would include not only land owned

by the tribe, itself, but also land owned both by tribal member and nonmembers alike.

As a practical matter, Sec. 1.102 of the Keweenaw Bay Indian Community Tribal Code makes sense. A system where state courts have jurisdiction over fee lands owned by non-tribal members, and tribal and/or federal courts have jurisdiction over all remaining lands would, within an Indian reservation, create "checkerboard" jurisdiction causing confusion, inconsistencies and potentially disruptive land use problems.

The issue presented in this case is not whether the tribal court has jurisdiction over non-tribal members based upon the nonmember[']s conduct, but instead, the issue is whether the tribe has jurisdiction to decide issues concerning Indian country land located within the L'Anse Indian Reservation. Our Court of Appeals in the unpublished case of *Joseph K Lumsden Bahweting Pub Sch Academy v Sault Ste Marie Tribe of Chippewa Indians*, [unpublished per curiam opinion of the Court of Appeals, issued October 26, 2004 (Docket No. 252293)], questioned whether a state court has jurisdiction to entertain the issue of whether a tribal court would have subject matter jurisdiction.

\* \* \*

This Court believes, without deciding, that the Keweenaw Bay Indian Community Tribal Court could exercise jurisdiction over the matter in dispute in this lawsuit; and thus, this Court is not a proper forum to decide the jurisdiction of the Keweenaw Bay Indian Community Tribal Court and/or the federal court in the setting of this lawsuit; and therefore, summary disposition is hereby GRANTED pursuant to the provisions of [MCR] 2.116(C)(4).

This appeal ensued.

## II. ANALYSIS

The question whether a court has subject-matter jurisdiction to hear a particular claim is a question of law that this Court reviews de novo. *Jamil v Jahan*, 280 Mich App 92, 99-100; 760 NW2d 266 (2008). "The burden is on the plaintiff to establish jurisdiction." *Universal Am-Can Ltd v Attorney General*, 197 Mich App 34, 37; 494 NW2d 787 (1992).

"Subject[-]matter jurisdiction in particular is defined as the court's ability to exercise judicial power over that class of cases; not the particular case before it, but rather the abstract power to try a case of the kind or character of the one pending." *Campbell v St John Hosp*, 434 Mich 608, 613-614; 455 NW2d 695 (1990) (quotation marks and citation omitted). Circuit courts are courts of general jurisdiction and derive their power from the Michigan Constitution. *Okrie v Michigan*, 306 Mich App 445, 467; 857 NW2d 254 (2014). Specifically, Const 1963, art 6, § 13 provides:

The circuit court shall have original jurisdiction in all matters not prohibited by law; appellate jurisdiction from all inferior courts and tribunals except as

otherwise provided by law; power to issue, hear and determine prerogative and remedial writs; supervisory and general control over inferior courts and tribunals within their respective jurisdictions in accordance with rules of the supreme court; and jurisdiction of other cases and matters as provided by rules of the supreme court.

The Revised Judicature Act also provides that "[c]ircuit courts have original jurisdiction to hear and determine all civil claims and remedies, except where exclusive jurisdiction is given in the constitution or by statute to some other court or where the circuit courts are denied jurisdiction by the constitution or statutes of this state." MCL 600.605.

In light of these statutory provisions, a circuit court is presumed to have subject-matter jurisdiction over a civil action unless Michigan's Constitution or a statute (1) expressly prohibits it from exercising jurisdiction, or (2) gives to another court exclusive jurisdiction over the subject matter of the suit. *Prime Time Int'l Distrib, Inc v Dep't of Treasury*, 322 Mich App 46, 52; 910 NW2d 683 (2017). " '[W]here this Court must examine certain statutory language to determine whether the Legislature intended to deprive the circuit court of jurisdiction,' this Court has explained, '[t]he language must leave no doubt that the Legislature intended to deprive the circuit court of jurisdiction of a particular subject matter.' " *Id*. (citation omitted).

There is no dispute that the land at issue is within the exterior boundaries of the L'Anse Indian Reservation.[5] There is also no dispute that the land is non-Indian fee land, as it is land originally allotted[6] to tribal members, but later transferred in fee to non-Indians and never reacquired in trust. Under 18 USC 1151,[7] "Indian country" includes all of the territory within the exterior boundaries of an Indian reservation. Consequently, land that non-Indians own in fee simple is also Indian country if it lies within the exterior boundaries of an Indian reservation. See *Seymour v Superintendent of Washington State Penitentiary*, 368 US 351, 357-358; 82 S Ct 424; 7 L Ed 2d 346 (1962), *McGirt v Oklahoma*, ___ US ___; 140 S Ct 2452; 207 L Ed 2d 985 (2020), slip op at 10-11, and *United States v Webb*, 219 F3d 1127, 1131 (CA 9, 2000) ("if the property is within boundaries of the reservation, it is Indian country irrespective of whether title is now held by a non-Indian.").

The trial court opined that the dispositive issue was whether the tribal court had jurisdiction over the reservation land dispute, but the issue presented by defendant's motion was whether the

---

[5] According to *Solem v Bartlett*, 465 US 463, 470; 104 S Ct 1161; 79 L Ed 2d 443 (1984), "[o]nce a block of land is set aside for an Indian Reservation and no matter what happens to the title of individual plots within the area, the entire block retains its reservation status until Congress explicitly indicates otherwise."

[6] "Allotment is a term of art in Indian law. It refers to the distribution to individual Indians of property rights to specific parcels of reservation." *Yankton Sioux Tribe v Gaffey*, 188 F3d 1010, 1015 (CA 8, 1999).

[7] Section 1151 was originally enacted to define criminal jurisdiction, but its definition of Indian country is widely recognized to also apply to civil matters. See *Alaska*, 522 US at 527.

circuit court had jurisdiction, and though that question is partially resolved by looking to whether the exercise of state jurisdiction would affect the tribe's self-governance, ultimately the question is whether the state court had jurisdiction over this dispute. In deciding that issue, the parties and the trial court should have focused on *Williams v Lee*, 358 US 217, 220; 79 S Ct 269; 3 L Ed 2d 251 (1959), as that decision set forth the "infringement test" for determining whether a *state court* can exercise jurisdiction over a dispute involving non-Indians and their property located on a reservation. *Pueblo of Santa Ana v Nash*, 972 F Supp 2d 1254, 1262 (D NM, 2013) ("The seminal United States Supreme Court decision concerning state civil adjudicatory authority in Indian country is *Williams v Lee*.").[8] We now turn to *Williams* and its progeny.

According to *Williams*, a state court can exercise jurisdiction over a dispute involving non-Indians and Indians on reservation land so long as doing so (1) is not preempted by federal law, or (2) does not unlawfully infringe on the right of the tribe to make and live by its own rules. *Williams*, 358 US at 220. Because states have an interest in resolving disputes involving non-Indians, and tribes have an interest in what occurs within its reservation, the *Williams* test "was designed to resolve this conflict by providing that the State could protect its interest up to the point where tribal self-government would be affected." *McClanahan v State Tax Comm of Arizona*, 411 US 164, 179; 93 S Ct 1257; 36 L Ed 2d 129 (1973). In *C'Hair v Dist Court of the Ninth Judicial Dist*, 357 P3d 723, 730 (WY, 2015) (citations omitted in part), the Wyoming Supreme Court nicely summarized the *Williams* test:

> In summary, *Williams* and its progeny stand for the rule that a state may assert jurisdiction over an activity or a dispute involving a non-Indian and arising within the boundaries of a tribal reservation if: 1) the state's exercise of authority is not preempted by incompatible federal law; and 2) the state's exercise of authority does not infringe on the right of reservation Indians to make their own laws and be ruled by them. As the Supreme Court has observed, "The upshot has been the repeated statements of this Court to the effect that, even on reservations, state laws may be applied unless such application would interfere with reservation self-government or would impair a right granted or reserved by federal law." *Mescalero Apache Tribe v Jones*, 411 US 145, 148; 93 S Ct 1267; 36 L Ed 2d 114 (1973) (citations omitted).

Neither party has pointed to any federal law that would be incompatible with a state court's exercise of jurisdiction over an easement dispute between non-Indians on the reservation. Thus, we turn to the second *Williams* test—whether exercise of state authority over this easement dispute would infringe on the tribal interest in self-government.[9]

---

[8] Some of the decisions address state jurisdiction in ways other than through a state court, like action by a state administrative agency. But it matters little which form of state jurisdiction is asserted (regulatory or adjudicatory), as the question is resolved through the same analysis. See *C'Hair v Dist Court of the Ninth Judicial Distt*, 357 P3d 723, 729-730 (WY, 2015).

[9] Indian tribes are recognized as "distinct, independent political communities" whose sovereignty "is of a unique and limited character." *Plains Commerce Bank v Long Family Land and Cattle*

In making this determination, we are guided in part by an exception to the preclusion of tribal court jurisdiction over non-Indians on Indian land developed in *Montana v United States*, 450 US 544, 565; 101 S Ct 1245; 67 L Ed 2d 493 (1981), a case in which the Court held that an Indian tribe did not have jurisdiction to preclude hunting and fishing by non-Indians on non-Indian fee land. Much like the *Williams* infringement test, the second exception to the *Montana* rule focuses on whether precluding tribal jurisdiction over non-Indians would "directly affect[] the tribe's political integrity, economic security, health or welfare.'" *Evans v Shoshone-Bannock Land Use Policy Comm*, 736 F3d 1298, 1303 (CA 9, 2013) (quotation marks omitted), citing *Strate v A-1 Contractors*, 520 US 438, 446; 117 S Ct 1404; 137 L Ed 2d 661 (1997). As can be seen, there is an overlap in the tests to determine when state jurisdiction exists (under *Williams*) and where tribal jurisdiction exists (under *Montana*), as both focus in large part on what impact (if any) jurisdiction would have on the right of a tribe to make and live by its own rules. See *C'Hair*, 357 P3d at 731 ("Although the *Williams* test is controlling in determining whether the district court properly assumed jurisdiction . . . , we also must consider the principles announced by the Supreme Court in its 1981 decision in *Montana* . . . . These cases are relevant to our analysis because, although they address tribal sovereignty from the perspective of limitations on tribal jurisdiction over non-Indians, rather than limitations on state jurisdiction, their holdings closely parallel the *Williams* analysis and inform the application of that analysis."), *Gustafson v Poitra*, 916 NW2d 804, 810; 2018 ND 202 (2018) ("the lack of tribal jurisdiction is a factor to be considered in determining whether state court jurisdiction exists"), and *Cordova v Holwegner*, 93 Wash App 955, 967; 971 P2d 531 (1999) ("The infringement [*Williams*] test and the *Montana* analysis examine the limits of tribal inherent sovereignty from different perspectives, the former by examining the extent of state jurisdiction and the latter by examining the extent of tribal jurisdiction. In some respects, the infringement test and the *Montana* analysis are merely different formulations of the same underlying concept.").

Turning to an application of *Williams* to the undisputed material facts, we readily conclude that the exercise of state jurisdiction over this easement dispute would in no way interfere with the tribe's power to control and govern its members and internal affairs. *Williams*, 358 US at 220. This holds true for several reasons. First and foremost, neither party is an Indian, and the land is neither land held in trust for the tribe (or a tribal member) nor owned individually by an Indian. Instead, it is fee land located within the reservation, or what the Supreme Court has termed "non-Indian fee land." *Strate*, 520 US at 446. And with respect to non-Indian fee land, the Supreme Court has made clear that "once tribal land is converted into fee simple, the tribe loses plenary jurisdiction over it." *Plains Commerce Bank v Long Family Land and Cattle Co*, 554 US 316, 328; 128 S Ct 2709; 171 L Ed 2d 457 (2008). Indeed, "efforts by a tribe to regulate nonmembers, especially on non-Indian fee land, are 'presumptively invalid.' " *Id*. at 330 (citation omitted). As the *Plains Commerce Bank* Court concluded, this holds true in part because any harm to a tribe's interest in regulating reservation land is generally lost once the land is sold by an Indian to a non-Indian:

---

*Co*, 554 US 316, 327; 128 S Ct 2709; 171 L Ed 2d 457 (2008). See also, *Paquin v St Ignace*, 504 Mich 124, 134-135; 934 NW2d 650 (2019).

By definition, fee land owned by nonmembers has already been removed from the tribe's immediate control. See *Strate*, 520 US at 456 (tribes lack power to "assert [over non-Indian fee land] a landowner's right to occupy and exclude"). It has already been alienated from the tribal trust. The tribe cannot justify regulation of such land's sale by reference to its power to superintend tribal land, then, because non-Indian fee parcels have ceased to *be* tribal land.

Nor can regulation of fee land sales be justified by the tribe's interests in protecting internal relations and self-government. Any direct harm to its political integrity that the tribe sustains as a result of fee land sale is sustained at the point the land passes from Indian to non-Indian hands. It is at that point the tribe and its members lose the ability to use the land for their purposes. Once the land has been sold in fee simple to non-Indians and passed beyond the tribe's immediate control, the mere resale of that land works no additional intrusion on tribal relations or self-government. Resale, by itself, causes no additional damage. [*Id*. at 336.]

Here, the land over which the easement allegedly exists is owned in fee by defendant, a non-Indian. The land has been considered non-Indian fee land since it was transferred out of Indian possession in 2012, and since that time the tribal interest in regulating that land has been de-minimis.[10] To the extent that divestiture of land harmed the tribe's economic security or political integrity (and there is no suggestion that it did), it would have resulted from the 2012 transaction, not when and if a state trial court rules on an easement dispute unrelated to the sale of the land from an Indian to a non-Indian.

Additionally, a state court decision on the existence of an easement would not interfere with the ability of the tribe to determine its own rules and govern itself and its members. The tribal powers most frequently cited by courts as critical to tribal self-government are the power to determine tribal membership, legislate and tax on-reservation activities, including some activities by nonmembers, and to exclude people from the reservation. *Id*. at 328-329. None of these tribal self-government interests would be impacted by the circuit court's decision on the easement dispute since it does not involve tribal members or land owned by tribal members. Nor does this case involve a zoning issue or other land use issue that could have the potential for impacting land use regulations.

As is evident, critical to resolution of the jurisdictional issue is both the status of the land as non-Indian fee land and that both parties are non-Indians. As we noted earlier, *Montana* articulated a " 'general proposition that the inherent sovereign powers of an Indian tribe do not

---

[10] For this reason, as well as several others, defendant's citation to *Boisclair v Superior Court*, 51 Cal 3d 1140; 801 P2d 305 (1990), does not help defendant. For one thing, *Boisclair* involved many parties, some of whom were Indians, and part of the dispute centered on trust property. *Boisclair*, 51 Cal 3d at 1144. Additionally, the central jurisdictional issue centered on a federal statute, 28 USC 1360, that has no application to Michigan. *Id*. at 1146. Finally, the court ruled that to the extent the dispute involved non-Indians and non-Indian fee land, state court jurisdiction existed. *Id*. at 1157.

extend to activities of nonmembers of the tribe', [and thus] efforts by a tribe to regulate nonmembers, especially on non-Indian fee land, are 'presumptively invalid.' " *Plains Commerce Bank*, 554 US at 330, quoting *Atkinson Trading Co v Shirley*, 532 US 645, 651, 659; 121 S Ct 1825; 149 L Ed 2d 889 (2001), and *Montana*, 450 US at 565. Accordingly, tribes face a "formidable burden" in meeting the second *Montana* exception, as " 'with only "one minor exception, [the Supreme Court has] never upheld under *Montana* the extension of tribal civil authority over nonmembers *on non-Indian land*." ' " *Evans*, 736 F3d at 1303, quoting *Plains Commerce Bank*, 554 US at 333, quoting *Nevada v Hicks*, 533 US 353, 360; 121 S Ct 2304; 150 L Ed 2d 398 (2001).[11] See also, *Strate*, 520 US at 446 (describing the "general rule that, absent a different congressional direction, Indian tribes lack civil authority over the conduct of nonmembers on non-Indian land within a reservation.").

Though no Michigan case has yet to apply *Williams* to a reservation land dispute between non-Indians,[12] our Court recognized years ago that the state has a significant jurisdictional interest in resolving criminal matters that arose between non-Indians on reservation land. *People v Collins*, 298 Mich App 166, 175-177; 826 NW2d 175 (2012), citing in part *United States v Antelope*, 430 US 641, 643 n 2; 97 S Ct 1395; 51 L Ed 2d 701 (1977). This same state interest in maintaining criminal jurisdiction over non-Indians actions on non-Indian fee land within a reservation—and the lower tribal interest in regulating the same—applies to civil disputes, a conclusion also reached by the New Mexico Court of Appeals in a case involving a permit dispute between two non-Indians on reservation land. See *Alexander v Cook*, 90 NM 598, 601; 566 P2d 846 (1977) (the court recognized that the tribal interest in regulating civil disputes on reservation land is at its lowest point when the dispute involves non-Indians, just as state and federal courts have held with respect to identical situations under criminal law).

Finally, we look to an analogous case, *Gustafson*, 916 NW2d 804, which addressed whether the second *Montana* exception applied to give tribal court jurisdiction over non-Indian fee land. In that quiet title action filed in state district court, the defendants argued that the state court had no jurisdiction to resolve the dispute because the land was located within the borders of an Indian reservation. *Id*. at 805. The trial court concluded that neither of the *Montana* exceptions applied, and ruled that it had jurisdiction. *Id*. at 805-806. Relying upon a prior decision[13] holding that when a tribal member conveys "a parcel of fee land '*to non-Indians*, [the tribe] loses any former right of absolute and exclusive use and occupation of the conveyed lands,' " and "[a]s a general rule, then, 'the tribe has no authority itself, by way of tribal ordinance or action in tribal courts, to regulate the use of fee land' " absent application of one of the *Montana* exceptions, *id*.

---

[11] That one exception came in a fractured opinion that concluded that a tribe had the authority to regulate certain use of non-Indian fee land through zoning regulations. *Brendale v Confederated Tribes and Bands of Yakima Indian Nation,* 492 US 408; 109 S Ct 2994; 106 L Ed 2d 343 (1989). Although the trial court's concern regarding a "checkerboard" reservation might have merit if this were a zoning or other land use case, it is not a concern with respect to an isolated easement question based on existing use.

[12] Actually, *Williams* has never been cited by any Michigan court, at least as far as we have found.

[13] *Fredericks v Fredericks*, 888 NW2d 177; 2016 ND 234 (2016).

at 808, the court held that neither applied to grant a tribal court jurisdiction over the non-Indian fee land dispute:

> The second exception from *Montana* . . . has been narrowed to conduct that must "imperil the subsistence" of the tribal community and that "tribal power must be necessary to avert catastrophic consequences." *Fredericks* [*v Fredericks*, 888 NW2d 177; 2016 ND 234, ¶ 9 (2016)] (citing *Plains Commerce* [*Bank*], at 341 [128 S Ct 2709]). The quiet title action in the current case for the fee land at issue simply doesn't rise to these heightened requisites. Should this Court quiet title to this land in Gustafson, such action would not imperil the subsistence of the Turtle Mountain Tribal Community, nor would the reservation of the tribal power be necessary to avert catastrophic consequences. *Id.* While the loss of this formerly Indian-owned fee land to a third party non-Indian is quite possibly disappointing to the Turtle Mountain Tribe, it cannot be called catastrophic for tribal self-governance. *Id*. at ¶ 10.

We agree with the district court's analysis. This is not an action by the Poitras to collect on a claimed breach of a lease of their land to Gustafson. See *Gustafson v Estate of Poitra*, 2011 ND 150, ¶¶ 3-5, 8, 14-15; 800 NW2d 842 (vacating state court judgment involving interpretation of lease for Indian-owned fee land within the exterior boundaries of Turtle Mountain Indian Reservation where non-Indian lessee brought action against Indian lessors in state court). Rather, this is a quiet title action by Gustafson, a non-Indian owner of fee land within the reservation, to clear his record title to the land and to recover damages for the Poitras' conduct in filing a lessor's lien with the Rolette County Register of Deeds and notifying Gustafson's bank about the lessor's lien. At the time this action was brought, Gustafson, a non-Indian, was the record title owner of the fee land. See *Plains Commerce Bank*, 554 US at 339; 128 S Ct 2709; *Fredericks*, 2016 ND 234, ¶ 7; 888 NW2d 177. The fee land at issue in this case had previously passed to Gustafson in the foreclosure action, and at that point, passed outside the immediate control of the Tribe and the Poitras. Gustafson's quiet title action works no additional intrusion on tribal relations or self-government and does not imperil the subsistence of the Tribe or the tribal community and cannot fairly be called catastrophic for tribal self-government. See *Fredericks*, at ¶ 11. We conclude the district court did not err in deciding the tribal court does not have jurisdiction over Gustafson's action to quiet title and to recover damages under the *Montana* exceptions. [*Gustafson*, 916 NW2d at 809-810.]

The same holds true here. Exercise of jurisdiction by the circuit court would have no significant, catastrophic-type consequences to the tribe and its power to control and govern its members and affairs. *Williams*, 358 US at 220. Frankly, there would be little interference, if any, with tribal self-government as a result of the circuit court ruling. The tribe lost control of the disputed land (perhaps not all activity on that land, but the land itself) when it was transferred by Indians to non-Indians in 2012. Now that the land is non-Indian fee land, the presumption is against tribal jurisdiction, and resolution of the easement dispute between non-Indians on non-

Indian fee lands will have no meaningful impact on the tribe's authority over the reservation and its members. State court jurisdiction exists to decide this matter.[14]

## III. CONCLUSION

For these reasons, we reverse the trial court's order granting defendant's motion for summary disposition, and remand for further proceedings. We do not retain jurisdiction. No costs to either party, a question of public significance being raised.

/s/ Christopher M. Murray
/s/ Mark J. Cavanagh
/s/ Thomas C. Cameron

---

[14] The unpublished case relied upon by the trial court, *Joseph K Lumsden Bahweting Pub Sch Academy v Sault Ste Marie Tribe of Chippewa Indians*, unpublished per curiam opinion of the Court of Appeals, issued October 26, 2004 (Docket No. 252293), has no bearing on this issue. Aside from the fact that it is unpublished, it has no persuasive authority because it involved an agreement between an Indian and non-Indian that contained a forum selection clause requiring certain litigation in the tribal court. There is no agreement between these parties with regard to a particular forum. Additionally, the Court's discussion of the efficacy of determining whether a tribal court *could* exercise jurisdiction (an issue we are not confronted with) was in the context of an argument over sovereign immunity, an issue also not presented in this case.